THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN L. MARKIEWICZ, Defendant-Appellant.

Second District No. 2—91—0499

Opinion filed June 22, 1993.

32

G. Joseph Weller and Kim˙ M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial in January 1991 defendant, John Markiewicz, was found guilty of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). Defendant was found to be eligible for the death penalty (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(8)), but was sentenced to a term of natural-life imprisonment without parole. Defendant raises the following issues on appeal: (1) whether evidence of other crimes was properly admitted; (2) whether trial counsel was ineffective; (3) whether defendant was entitled to a hearing on his allegations of ineffective assistance of counsel; (4) whether the State's comments during closing argument deprived defendant of a fair trial; and (5) whether the court abused its discretion in sentencing. For the following reasons, we affirm in part, reverse in part, and remand.

Defendant was charged with three counts of first degree murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2)) arising from the death of the victim, Debra Shelton. Shelton was last seen alive on March 30, 1988. On April 27, 1989, her decomposed body was discovered buried on the banks of the Fox River in a 55-gallon drum. An autopsy conducted by Dr. Lawrence Blum found the cause of death to be acute cocaine overdose. At trial, the State argued that defendant repeatedly injected the victim with cocaine until she died to prevent

her from revealing information about the abduction, kidnapping, aggravated battery, and murder of Frank Mahlendorf.

Ray Katzensky testified for the State in exchange for immunity from prosecution for his involvement in the kidnapping and aggravated battery of Frank Mahlendorf and Shelton's murder and its concealment. Paul Schmitz testified for the State in exchange for immunity from prosecution for his involvement in Shelton's murder and its concealment. Schmitz and Katzensky both testified that on March 23, 1988, they accompanied defendant to the home of Frank Mahlendorf to collect money owed for narcotics. When Mahlendorf opened the door, defendant forced him into Katzensky's automobile. Defendant informed Mahlendorf that he wanted the money owed for drugs and repeatedly struck him. When Mahlendorf responded that he did not have the money, defendant drove to Schmitz' home in South Elgin, Illinois. Defendant forced Mahlendorf into the garage and repeatedly slapped, beat, and kicked him, eventually breaking his nose. Katzensky and defendant tied Mahlendorf's hands to his feet and threw him into the trunk of Katzensky's automobile. Schmitz, Shelton, and defendant drove Katzensky's automobile to Wisconsin. They dropped Shelton off on a gravel road and proceeded to Devil's Lake. Defendant took Mahlendorf out of the trunk, dragged him into a culvert, and shot him. Defendant handed the gun to Schmitz and Schmitz shot Mahlendorf. Mahlendorf's body was left in the ditch. Schmitz, Shelton, and defendant drove to Iowa for a few days, stopping to throw the gun in the Mississippi River. Schmitz was eventually convicted of Mahlendorf's murder and is presently serving a double life term of imprisonment for that crime. The charges against defendant for Mahlendorf's murder were dropped.

Schmitz testified that defendant told him Shelton needed to be killed because she knew about Mahlendorf's murder. On March 30, 1988, a farewell party was held for Shelton at Katzensky's apartment. Shelton was planning to leave for Tennessee the next day to live with her father. At the party, Shelton drank some champagne which was dosed with LSD by defendant. Later that evening, Shelton accompanied defendant to Schmitz' home. Defendant filled three syringes of cocaine. Defendant and Shelton entered the garage at Schmitz' residence and defendant began to inject cocaine into Shelton's body. After a time, defendant informed Schmitz that Shelton was having a seizure. Schmitz observed that Shelton was shaking, groaning, and had urinated on herself. Shelton was shaking so severely that Schmitz had to hold her down while defendant sat on Shelton's chest and attempted to inject her arm with another syringe filled with cocaine.

After five or six unsuccessful attempts, defendant injected Shelton's leg with the syringe. When Schmitz returned to the garage, Shelton was dead. Schmitz wrapped her body in a blanket and locked it in a room in the garage.

Three days after Shelton's death, Katzensky, Schmitz and defendant placed her body into a 55-gallon drum. Katzensky and defendant drove to McHenry County and rolled the drum into the Fox River. Approximately one month later, defendant told Katzensky that they were going to have to bury the drum. Defendant and Katzensky rented a boat and bumped into the drum while searching for it on the Fox River. They towed the drum to the bank of the river, rolled the drum into a hole they dug, and covered it. Katzensky returned the next day with concrete and finished burying the drum.

On April 27, 1989, Katzensky led the police to the spot where he buried the drum containing Shelton's body. An autopsy performed by Dr. Lawrence Blum and a toxicological analysis revealed a small amount of cocaine and a larger amount of benzoyl ecogonine, the chemical breakdown product of cocaine, in the gastric contents of Shelton's body. Blum found no signs of blunt trauma, stabbing, gunshot wound, disease, or heart problems. Blum found the fact that traces of cocaine remained in Shelton's body significant because the drug breaks down easily in the body. Based on this, Blum opined that Shelton died of an acute cocaine overdose.

Following a jury trial in January 1991, defendant was found guilty of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) Defendant was found to be eligible for the death penalty on the basis that he murdered Shelton to prevent her from testifying or otherwise assisting the State in prosecuting him for the Mahlendorf murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(8).) However, the jury found the existence of mitigating factors sufficient to preclude a death sentence. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c).

At the sentencing hearing, 10 witnesses testified as to defendant's childhood and his activities during incarceration. The court stated that it heard all the testimony and considered the presentence report and letters presented. However, the court determined that none of the evidence presented in mitigation could be considered "under any of the factors in mitigation listed by the statute." Defendant was sentenced to a term of natural life in prison without parole.

Defendant's attorneys filed a post-trial motion for a new trial alleging various errors. Defendant later filed two *pro se* post-trial motions alleging ineffective assistance of counsel. Defendant's trial attorneys, John Paul Carroll and M. Lee Witte, were granted leave to

withdraw as attorneys for defendant because of a conflict of interest created by defendant's *pro se* post-trial motion alleging ineffective assistance of counsel. Defendant's post-trial motions for a new trial were denied after a hearing, and this appeal followed.

### EVIDENCE OF OTHER CRIMES

Defendant first contends that he was denied a fair trial by the admission of evidence of other crimes, including drug trafficking, drug abuse, possession of weapons, murder, and solicitation. Evidence of crimes, wrongs, or acts for which a defendant is not on trial is inadmissible for the purpose of establishing his propensity to commit crime. (*People v. Lucas* (1992), 151 Ill. 2d 461, 485.) This type of evidence is prejudicial because a jury may convict the defendant because it believes he is a bad person and deserves punishment. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 452.) However, evidence of other crimes may be admitted when relevant to show motive, intent, mistake, absence of mistake, identity, common design, or *modus operandi* (*Lucas*, 151 Ill. 2d at 486), if the probative value of the evidence outweighs the risk of unfair prejudice (*People v. Maxwell* (1992), 148 Ill. 2d 116, 130). Our supreme court has gone so far as to hold that evidence of other offenses is admissible if it is relevant to establish any material issue other than the propensity to commit crime. *People v. Stewart* (1984), 105 Ill. 2d 22, 62; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182.

Before such evidence is admitted, the State must first show that crime or misconduct occurred and that the defendant committed the offense or participated in its commission. (*Lucas*, 151 Ill. 2d at 486; *Thingvold*, 145 Ill. 2d at 455.) The degree of proof necessary to show that the defendant participated in the commission of the crime need not be beyond a reasonable doubt, but must be more than a mere suspicion. (*Thingvold*, 145 Ill. 2d at 456.) When such evidence is offered, the trial court must establish the purpose for which the evidence is offered and weigh the relevance of the evidence against its prejudicial impact. (*Thingvold*, 145 Ill. 2d at 452.) The admissibility of such evidence is a matter within the sound discretion of the trial court which will not be reversed on review absent an abuse of that discretion. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364.) An abuse of discretion will be found "only where the trial court's decision is 'arbitrary, fanciful or unreasonable' or 'where no reasonable man would take the view adopted by the trial court.' " *Illgen*, 145 Ill. 2d at 364, quoting *People v. M.D.* (1984), 101 Ill. 2d 73, 90.

In this case, evidence of other crimes was admitted through the testimony of several of the State's witnesses. Defense counsel failed to raise a timely objection when this testimony was admitted. He also failed to pursue a motion *in limine*, filed by defendant's prior attorney, which sought to limit the State from eliciting information concerning defendant's reputation as a drug dealer, for violence, and that the State's witnesses feared retaliation from defendant. Further, defense counsel failed to object when a pattern jury instruction was withdrawn which limited the jury's use of evidence of other crimes. (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d).) For these reasons, defendant now claims that he was denied the effective assistance of counsel. Although both defense counsel and defendant filed post-trial motions for a new trial, these motions fail to raise the issue of any error which occurred by the admission of evidence of other crimes aside from that relating to the amount of detail admitted concerning Mahlendorf's murder.

The failure to timely object when the evidence of other crimes is introduced and to raise the issue in a post-trial motion operates as a waiver of defendant's right to raise the issue as a ground for reversal on review. (*Lucas*, 151 Ill. 2d at 481.) To preserve an issue for review, an objection to the alleged error must be made at trial and included in a post-trial motion. (*People v. Turner* (1989), 128 Ill. 2d 540, 555; *People v. Enoch* (1988), 122 Ill. 2d 176, 187.) However, the plain error rule (134 Ill. 2d R. 615(a)) permits a reviewing court to consider issues waived on appeal if (1) the evidence in a criminal case is closely balanced; or (2) the complained-of error "is so fundamental and of such magnitude that the accused was denied a fair trial." *People v. Herrett* (1990), 137 Ill. 2d 195, 209-10.

■ The evidence in this case was not closely balanced. Both Schmitz and Katzensky testified that defendant intended to kill Shelton to prevent her from revealing her knowledge of Mahlendorf's murder. Schmitz related his observations while aiding defendant in repeatedly injecting Shelton with cocaine until she died. Katzensky testified of his involvement while aiding defendant in concealing Shelton's murder by placing her body in the drum and burying it in the Fox River. Although these witnesses testified in exchange for immunity from prosecution, their testimony was corroborated by other witnesses who testified that defendant admitted he murdered Shelton. Furthermore, no witnesses were called to testify for the defense to give a different explanation of the events related by the State's wit-

nesses. Thus, we find that the evidence in this case was not closely balanced.

The second basis upon which to invoke the plain error rule is where the error is so fundamental that it deprived defendant of a fair trial. Consequently, we must first determine whether it was error to admit the evidence of other crimes of which defendant now complains. If so, we must determine whether the error was of such magnitude that it deprived defendant of a fair trial.

In this case, Schmitz and Katzensky related the events occurring prior to Mahlendorf's murder. Defendant concedes that some information concerning the Mahlendorf murder was admissible to prove defendant's motive in murdering Shelton. However, defendant contends that the facts admitted in support of the State's motive theory should have been limited to the details of the Mahlendorf murder which Shelton knew. (See *People v. Smith* (1990), 141 Ill. 2d 40, 56.) He asserts that the detailed account of Mahlendorf's murder amounted to a trial within a trial and should have been excluded as more prejudicial than probative.

■ We agree that it was not necessary to elicit all of the details concerning Mahlendorf's murder. Even where some evidence of another crime is competent and relevant, the State may not put on a trial within a trial by means of detailed evidence of the other crime. (*People v. Bartall* (1983), 98 Ill. 2d 294, 315.) The trial court should carefully limit evidence of the other crime to that which is relevant to the issues on which the other crime evidence is admitted. *Bartall*, 98 Ill. 2d at 315; *People v. Curtis* (1986), 141 Ill. App. 3d 827, 831.

In this case, the State sought the death penalty on the basis that defendant murdered Shelton to prevent her from revealing information concerning his involvement in Mahlendorf's murder. Thus, the details of Mahlendorf's murder that Shelton knew or observed were admissible to prove defendant's motive in murdering Shelton. According to Katzensky, Shelton observed Mahlendorf tied and beaten at Schmitz' residence, accompanied defendant and Schmitz to Wisconsin with Mahlendorf in the trunk of the automobile, and drove to Iowa after Mahlendorf's murder, stopping to dispose of the murder weapon in the Mississippi River. She did not observe what occurred prior to the time defendant brought Mahlendorf to Schmitz' home. Thus, these details were arguably inadmissible.

Contrary to *People v. Olson* (1981), 96 Ill. App. 3d 193, which defendant cites, the details of Mahlendorf's murder to which Schmitz and Katzensky testified and Shelton did not observe were not graphic or inflammatory. (See *People v. Kincy* (1982), 106 Ill. App. 3d 250,

257.) The witnesses simply related the events leading up to Mahlendorf's murder, which included his abduction and beating in Katzensky's automobile en route to Schmitz' home, where Shelton first observed this victim. Accordingly, we find that the court did not abuse its discretion in admitting the details of the Mahlendorf murder. (See *People v. Breton* (1992), 237 Ill. App. 3d 355, 363.) Thus, as to this evidence, there was no error, let alone plain error.

The next type of evidence to which defendant objects concerns evidence of defendant's extensive drug trafficking and drug abuse. At trial, the State's witnesses related defendant's use of intravenous drugs, his history of drug abuse, his involvement in the drug milieu, and his nickname, "doctor John," which described his proficiency in delivering intravenous injections of narcotics.

 Contrary to defendant's contention, this evidence was not relevant merely to show defendant's propensity to commit drug-related crimes. The State's theory was that defendant murdered Shelton by repeatedly injecting her body with cocaine. His involvement with drugs and self-proclaimed proficiency at injecting narcotics was directly relevant to the method utilized in Shelton's murder. Further, defendant's knowledge of and experience with narcotics were relevant in illustrating that defendant knew the amount of cocaine he injected in Shelton's body was lethal and that he intended to kill her. This evidence eliminates any speculation that defendant mistakenly injected Shelton with a fatal overdose of cocaine. The cases defendant cites where evidence of defendant's drug-related activities was held to be prejudicial such that a new trial was warranted are factually inapposite because they do not involve a murder where the victim was killed by a fatal dose of a narcotic. (See *People v. Speight* (1992), 153 Ill. 2d 365, 372-73; *People v. Mitran* (1990), 194 Ill. App. 3d 344.) Again, as to this evidence, there was no error, let alone plain error.

Defendant next objects to Katzensky's statement that defendant told him he dismembered a woman's body, burned it, and threw it into a river. The following interchange occurred when Katzensky testified of his involvement in burying the drum containing Shelton's body:

"Q. [Mr. Barsanti, for the State]: After you brought the boat back, did [defendant] give you any further instructions?

A. [Ray Katzensky]: Yeah, on the way home. Well, on the way back to taking the boat back he said tomorrow we're going to have to come back and finish covering her up and get some concrete to put over the top. We needed a bucket and the concrete was the main thing to fix it up and throw it on there.

Q. Did he tell you to get those items?

A. Yes. Then he also said—after we got into my car and we were headed back, after we took the boat back, then John said, well, the same thing about I'm not supposed to tell nobody nothing, and then he told me what he did to a woman one time. I didn't know whether he was lying or not, but I believed it. He said he cut off her head and her hands and her feet and burned them and cut the rest of her up and threw her in the river.

Q. You don't know if that's true or not?

A. No, I don't."

Defendant contends that this evidence should have not been admitted.

■■ We agree. Even if this evidence was relevant to prove intent, *modus operandi*, or defendant's willingness to commit murder, it was inadmissible. Evidence of other crimes is inadmissible even for a proper purpose until it is shown that a crime actually took place and that defendant committed it or participated in its commission. (*Lucas*, 151 Ill. 2d at 486.) Katzensky's statement should have been excluded because there was no foundation indicating that this murder actually took place. Therefore, the trial court abused its discretion in admitting this statement. However, Katzensky stated that he did not know whether this statement was true. Thus, the jury was on notice that defendant's statement may have been untrue and was potentially unreliable. Accordingly, we do not find it rises to plain error.

■■ Defendant also objects to evidence that he possessed an "Uzi." This information was elicited when Schmitz gave the following details of the day Shelton's body was placed in the drum and buried:

"Q. [by Mr. Barsanti, for the State]: Did you see [defendant] that morning?

A. [by Paul Schmitz]: Yes.

Q. Did you notice if he was carrying anything?

A. He might have had a gun on him. I think he had his Uzi, I don't know.

Q. He had his what?

A. Uzi.

Q. Is that an automatic pistol?

Mr. Carroll [for the defense]: Excuse me, Judge.

The Witness: I guess.

Mr. Carroll: I think he said he might have had a gun. If he's not sure, I would object to going into the status of what—

THE COURT: You want to rephrase the question.

By Mr. Barsanti:

Q. Did you see anything in his hands that morning when you got out of your room?

A. He didn't have nothing in his hands, no. If he had his Uzi on him at that time, it was underneath his coat.

Q. Did you see it?

A. I don't know if it was that morning or not."

Defendant contends that the only relevant evidence of the use of a gun was that Mahlendorf was shot with a .22 caliber gun. We agree. While the testimony was improper, we determine that any prejudicial effect did not constitute plain error. (See *People v. Prewitt* (1987), 160 Ill. App. 3d 942, 950.) The witness stated that he did not actually see defendant's "Uzi." Thus, the jury was on notice that defendant actually may not have had this type of gun.

Even if all the evidence of other crimes was admissible, defendant contends that it was plain error to admit the evidence without an instruction limiting the jury's use of the evidence for a proper purpose. At the instruction conference, the State withdrew the following instruction without objection by the defense:

"Evidence has been received that the defendant has been involved in offenses other than that charged in the indictment. This evidence has been received solely on the issue of defendant's identification, presence, intent, motive, design and knowledge. This evidence may be considered by you only for the limited purpose for which it was received." (Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981).)

Thus, the jury heard evidence of Mahlendorf's murder, of defendant's history and involvement with drugs, that defendant told Katzensky he once murdered a woman, cut up her body, and threw it in the river, and that defendant possessed an Uzi, without an instruction cautioning the limited purpose for which this information was admitted.

■ Under Supreme Court Rule 451(c), "substantial defects" in jury instructions in criminal cases are not waived by failing to timely object "if the interests of justice require." (134 Ill. 2d R. 451(c).) This exception to the waiver rule is limited to "grave errors" or situations where the case is close factually and fundamental fairness requires the jury to be properly instructed. (*People v. Ivory* (1991), 217 Ill. App. 3d 619, 623.) A limiting instruction on the use of other crimes evidence would have been appropriate in this case. However, our research reveals no case law indicating that plain error always occurs when the court fails to instruct the jury of the limited purpose for which evidence of other crimes is admitted.

On the contrary, in *People v. Crowder* (1987), 161 Ill. App. 3d 1009, 1017, the court found that a defendant waived the issue of the prejudicial admission of other crimes evidence by failing to object

when the evidence was admitted during trial and by failing to seek any cautionary instructions. Further, a trial court is not responsible for giving an instruction not offered *sua sponte*. It is the burden of the party who desires a specific instruction to present it to the court and request that it be given to the jury. (*Turner*, 128 Ill. 2d at 562.) Generally, the only instructions necessary to ensure a fair trial include the elements of the crime charged, the presumption of innocence, and the question of burden of proof. *Turner*, 128 Ill. 2d at 562-63.

In this case, the instruction was not given because the State withdrew it without objection by the defense. It can be inferred that the jury could have considered the evidence of other crimes committed by defendant for an improper purpose. However, an error in a jury instruction is harmless if the result of the trial would not have been different if a proper instruction was given. (*People v. Johnson* (1991), 146 Ill. 2d 109, 137.) As we previously determined, the evidence in the case was not closely balanced. One witness testified that defendant informed him that he was planning to murder Shelton because she knew too much about Mahlendorf's murder. This same witness related his observations while aiding defendant in injecting Shelton with a syringe filled with cocaine and that she died shortly after. Another witness testified of his observations in aiding defendant in concealing Shelton's murder. This evidence was corroborated by other witnesses who testified that defendant admitted he killed Shelton. On this basis, we find that any error resulting from the failure to instruct the jury on the limited purpose for which the evidence of other crimes was received would not have affected the outcome of the trial.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In this case, defendant's trial attorneys, John Paul Carroll and M. Lee Witte, filed a post-trial motion for a new trial alleging various errors. Subsequent to that time, defendant wrote a letter to his trial attorneys requesting that the post-trial motion be amended to include claims of ineffective assistance of counsel. Carroll responded by stating that he amended the post-trial motion to include several of defendant's requests but would not amend it further because he found the additional issues defendant raised were meritless. In Carroll's opinion, defendant would benefit more by concentrating on the sentencing phase of his trial since the chances of receiving a new trial were bleak. He informed defendant that his right to appeal was already protected and he would not file inappropriate motions. If defendant persisted, Carroll stated that he would be forced to with-

draw as defendant's attorney. Defendant's post-trial motion was denied.

In spite of this, defendant filed two *pro se* post-trial motions following trial and sentencing which alleged ineffective assistance of counsel by virtue of errors made by the *State* and the *court*, including the court's failure to procure an expert pathologist for the defense. Carroll filed a motion to withdraw as counsel for defendant based on an apparent conflict of interest. Carroll appeared before the court and presented a copy of a notice of the motion to withdraw which was signed by defendant. The court granted the motion believing that defendant consented to the withdrawal. The court subsequently requested that attorney Fred Morelli be appointed to represent defendant. Defendant advised Morelli that he was not confident in his abilities and did not want him as his attorney. Thus, the court informed defendant that he would have to retain private counsel.

When defendant appeared for a hearing on his *pro se* motions for a new trial, he requested that an attorney be appointed to represent him. Defendant informed the court that he signed the notice of the motion to withdraw only to indicate he was served. Thereafter, the court vacated its order of discharge and reappointed attorneys Carroll and Witte to represent defendant. Defendant expressed concern over the time during which he could file a notice of appeal since 27 days passed from the time he was sentenced. Since the court already denied the post-trial motion filed by his attorneys, the judge informed defendant that he was unsure whether the time during which defendant could file a notice of appeal was stopped while his *pro se* post-trial motions were pending. Defendant proceeded to argue his motions. The court reserved its ruling on three issues until attorney Carroll was able to appear before the court. Carroll appeared the following day and argued these issues on behalf of defendant. Defendant's *pro se* post-trial motions for a new trial were denied in their entirety, including the issue of whether an expert pathologist should have been appointed for the defense.

Defendant contends that in accordance with *People v. Krankel* (1984), 102 Ill. 2d 181, this matter should be remanded to determine whether defendant was denied the effective assistance of counsel, as he should have had other counsel appointed to argue his *pro se* post-trial motions which raised the issue of ineffective assistance of trial counsel. *Krankel* did not establish a *per se* rule that all *pro se* motions for a new trial which allege ineffective assistance of counsel must result in the appointment of new counsel to assist in the motion. (*Peo-*

*ple v. Crane* (1991), 145 Ill. 2d 520, 533.) Rather, the trial court must examine the factual matters underlying the defendant's claim. If the claim pertains to a matter of trial strategy or is otherwise spurious, new counsel is not necessary. (*People v. Nitz* (1991), 143 Ill. 2d 82, 134.) Only if the allegations illustrate possible neglect should new counsel be appointed to make an independent evaluation of the defendant's complaint and present it to the court. *People v. Williams* (1991), 147 Ill. 2d 173, 251; *Nitz*, 143 Ill. 2d at 134.

■ It would be improper for the court to require attorney Carroll to argue that his own conduct at trial was ineffective. However, our review of defendant's *pro se* post-trial motions reveals that the errors he alleges, including the issue of the appointment of an expert pathologist for the defense, although couched in terms of ineffective assistance of counsel, actually attack procedural and substantive rulings by the court and alleged errors by the State. Thus, defendant's *pro se* post-trial motions were redundant of the post-trial motions previously filed by defendant's trial attorneys and denied by the court. For these reasons, the trial court did not err in refusing to appoint a new attorney to represent defendant at the hearing on his *pro se* post-trial motions. His contentions either reiterated the previous post-trial motions filed by his attorneys or encompassed issues that might have been raised at that time.

On rehearing, defendant contends that he could not have raised the issue of attorney Carroll's neglect in retaining an expert pathologist in his post-trial motion because the issue "did not arise until *after* the trial court informed the defendant [during the hearing on defendant's *pro se* post-trial motion] that it never denied the defense expert fees because defense counsel never asked for them." Our review of the record reveals that Carroll's predecessor, Larry Wechter, filed a motion for an *ex parte* hearing regarding defendant's request to appoint a forensic pathologist. The court denied the request for an *ex parte* hearing and, in doing so, informed attorney Wechter that no motion to appoint an expert was pending before the court. On the record, Wechter amended his motion and requested the court to provide a forensic pathologist. The court responded that it would not approve fees for an expert from Pennsylvania without a schedule of fees for other experts in the area. Thereafter, Wechter withdrew from the case, and Carroll was appointed to represent defendant. The record reveals that a fee schedule was never presented to the court and no expert was ever appointed.

We agree with defendant that the court may not have been aware of Carroll's possible misrepresentation at the time of its ruling on

defendant's *pro se* post-trial motions. However, assuming *arguendo* defendant would be entitled to a *Krankel* hearing and appointment of new counsel to argue his *pro se* post-trial motions, defendant still has not demonstrated that he would be entitled to a new trial. Unlike the situations in *Krankel, People v. Williams* (1992), 224 Ill. App. 3d 517, *People v. Finley* (1991), 222 Ill. App. 3d 571, and *People v. Jameson* (1987), 155 Ill. App. 3d 650, where the identity of the uncontacted witness was known and the evidentiary value of the proposed testimony self-evident, there is no identified pathologist in this case or any proposed testimony. Since the record does not disclose the substance of the expert's proposed testimony, its evidentiary value is entirely speculative. Thus, even if defendant was able to prove Carroll's misrepresentation, he would be unable to show any prejudice resulting from such action or inaction. The indictment in this case was not confined to the theory that the victim died of a cocaine overdose. Even if a pathologist was retained to dispute Dr. Blum's findings, this would not preclude a jury's finding that defendant was responsible for the acts which caused Shelton's death. Therefore, defendant has not demonstrated that an alternate pathologist's opinion would have led to a different result. For these reasons, the trial court did not err in refusing to appoint new counsel to represent defendant at the hearing on his *pro se* post-trial motions.

Turning to defendant's allegations of ineffective assistance of counsel which were not raised either in the post-trial motions filed by his attorneys or in his *pro se* post-trial motions, defendant asserts that his trial attorney, John Carroll, failed to preserve the record for review by (1) failing to object when the above evidence of other crimes was admitted; (2) failing to pursue a motion *in limine* to preclude the State from eliciting information concerning defendant's reputation as a drug dealer, for violence, and that the State's witnesses feared retaliation from defendant; and (3) failing to object when the State withdrew an instruction limiting the jury's use of evidence of other crimes.

There is a strong presumption that counsel's performance at trial and at sentencing fell within the range of acceptable behavior. (*People v. Wright* (1992), 149 Ill. 2d 36, 46.) To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was so seriously deficient that it fell below an objective standard of reasonableness; and (2) the deficient performance was so prejudicial that the defendant was denied a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) To

show actual prejudice, defendant must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Titone* (1992), 151 Ill. 2d 19, 36.) An accused is entitled to competent, not perfect, representation. The fact that a defense tactic was unsuccessful does not retrospectively demonstrate incompetence. Therefore, counsel's performance at trial will not be deemed ineffective if the claimed error was a matter of discretion, trial tactics, or strategy. *People v. Williams* (1992), 235 Ill. App. 3d 638, 651.

■ We previously discussed the admissibility of various evidence of other crimes admitted during trial. Although some of this evidence was admissible, defense counsel failed to object when the State withdrew a pattern jury instruction limiting the use of such evidence. Failing to object has been held to constitute a matter of sound trial strategy. (*People v. Steidl* (1991), 142 Ill. 2d 204, 240-41; *People v. Bosek* (1991), 210 Ill. App. 3d 573, 600-01.) However, defendant's trial attorneys should have sought an instruction limiting the jury's use of evidence of other crimes. It is not a matter of discretion or trial strategy for a defense attorney to fail to seek an instruction when extensive evidence of.another crime is admitted, even for a limited purpose.

Nevertheless, a reviewing court need not determine whether counsel's performance was deficient prior to examining whether defendant suffered any prejudice as a result of the alleged deficiencies. An ineffectiveness claim may be disposed of on the ground of insufficient prejudice without deciding whether the alleged errors constitute constitutionally ineffective assistance of counsel. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Odle* (1992), 151 Ill. 2d 168, 173.) We previously discussed the admissibility of evidence of the other crimes or wrongdoings committed by defendant. Some of the evidence was admissible for limited purposes of illustrating motive, intent, method, *modus operandi*, and consciousness of guilt. However, we further determined that allowing the evidence to be admitted, even without the limiting instruction, did not amount to plain error, as the evidence was not closely balanced or the error so fundamental that defendant was deprived of a fair trial. Similarly, any error which may have occurred when defendant's trial attorneys failed to object when this evidence was admitted and to seek an instruction limiting the jury's use of other crimes evidence was harmless, as defendant has failed to establish that, but for counsel's errors, the result of the proceeding would have been different.

## CLOSING ARGUMENTS

Defendant asserts that he was denied a fair trial by improper comments made by the State during closing argument. The State is allowed substantial latitude in closing argument. (*Williams*, 147 Ill. 2d at 231.) The prosecutor has the right to comment on the evidence and draw all legitimate inferences deducible from the evidence even if unfavorable to defendant. (*People v. Johnson* (1992), 149 Ill. 2d 118, 145.) Although the State's comments may exceed the bounds of proper argument, the verdict must not be disturbed unless the remark clearly affected the outcome of the trial. (*People v. Leger* (1992), 149 Ill. 2d 355, 399.) Absent a clear abuse of discretion, the trial court's determination of the propriety of the closing argument should be followed. *Johnson*, 149 Ill. 2d at 145.

In closing argument, the prosecuting attorney stated as follows:

"And you hear a lot about this term beyond a reasonable doubt and burden of proof and I'd just like to talk about that for a moment. The burden of proof means that the State has to prove the defendant guilty beyond a reasonable doubt. That's our burden. That's what we have to do, the State. We have to put on people to tell you.

I just want to let you know that that's the same burden of proof in every criminal case in this country. Every criminal verdict that there has ever been entered of a guilty was based on that very same burden. Be it like this, a murder case, or bicycle theft case or some minor theft case or driving under the influence of alcohol case, it's the same burden. Every time there is a guilty verdict, the State has sustained that burden. It's nothing new. It's nothing magical. It's nothing different because of this particular case. That's the way it is in every case, in every court, in every type of crime across this country."

Defendant contends that the State erroneously minimized its burden of proof by comparing burden of proof in the instant case to that of a bicycle theft case.

Defendant failed to object to the prosecutor's remarks during closing argument. Therefore, we would be justified in holding that the issue was waived. (*Enoch*, 122 Ill. 2d at 187.) Notwithstanding the waiver rule, we do not find plain error.

This court has held that proper commentary includes remarks which characterize the State's burden of proof as one which is not unreasonable or impossible to meet and as one which prosecutors meet daily. (*People v. Hicks* (1987), 162 Ill. App. 3d 707, 714.) However,

50

each case must be decided on its own facts. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523.) It is interesting to note that the State discussed its burden of proof in a strikingly similar fashion in *People v. Scaggs* (1982), 111 Ill. App. 3d 633, 637 ("Every defendant that has ever been convicted in this building in this country has been convicted beyond a reasonable doubt whether it is stealing a bicycle or committing a murder. It does not put this man on a pedestal. It is not some impossible thing floating up there in the air. It is a burden that is met every day"). In *Scaggs*, the court found that this "frequently used argument" has been repeatedly held to be improper because it may have the effect of lessening the importance of the State's burden of proof. (*Scaggs*, 111 Ill. App. 3d at 637.) However, the *Scaggs* court did not make a finding of whether this error alone was sufficient to require a new trial. Rather, the court found that the cumulative impact of several errors mandated a new trial. See also *People v. Starks* (1983), 116 Ill. App. 3d 384, 395-96.

We do not find that the prosecutor's comments in this case constituted plain error. While we do not condone or encourage argument which compares the burden of proof in a murder case to that involving a bicycle theft, we find that the prosecutor's comments were an honest reflection and statement of the law. Further, our review of the State's entire closing argument reveals that its burden of proof was not minimized. The prosecutor accurately indicated that the jury was the finder of fact and would be instructed to decide the case based on the evidence it heard. The jury was informed of the State's burden of proof and also that the defense had no burden and was not required to prove anything. Defendant may not choose one portion of the closing argument and ignore these other statements. For these reasons, we find the State's closing did not constitute reversible error.

During opening argument, defense counsel suggested that Ray Katzensky and Paul Schmitz were responsible for murdering Mahlendorf and Shelton. During closing argument, the prosecuting attorney stated as follows:

"What I recall the defendant saying to you [during the State's opening argument] is that Ray Katzensky and Paul Schmitz did this crime. *** In fact, I heard counsel a couple times ask witnesses isn't it true, Mr. Schmitz, that it was you and Ray Katzensky who went in there and killed Mahlendorf or it was you and Ray Katzensky who went in that barn and gave the cocaine to Debra Shelton. And to those questions that were asked, the answer was no, that's not true. No. That was the answers that were given to those questions.

* * *

Now, no one in this case has ever said that, what counsel suggested to you [during opening argument]. He has asked a question about it. The answer to that question is no. What is evidence is not what he asked, it's what that person says. He can ask anything. What's important is what they say. No one in this case ever said Katzensky and Schmitz did that. No one. There is no testimony of that. There is none. And he questioned along those lines and when it was posed it was knocked down and was answered in a negative manner. No, that's not the case. It was this man, it was Markiewicz, it was not him.

You have to remember that and you have to keep that in mind because that's very important. You can say whatever you want, ladies and gentlemen. I can say whatever I want here. Attorneys can say whatever they want in opening statement. But what it comes down to, what the proof is, what the proof of the pudding is will someone take that witness stand and say that. Is there some evidence in this record, some testimony in this record about what counsel suggested to you. And no, there is not."

Defendant failed to object to these statements during trial. Nevertheless, we review defendant's contentions on the merits under the plain error rule. 134 Ill. 2d R. 615(a).

On appeal, defendant contends that the State's comments improperly emphasized the defense's failure to present any witnesses to refute the evidence admitted during trial. We disagree. An accused has a constitutional right not to testify as a witness in his own behalf. (*Herrett*, 137 Ill. 2d at 210.) The prosecution may not directly or indirectly comment on the defendant's failure to take the stand in his own defense. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390.) The prosecution may, however, describe the State's evidence as uncontradicted, even if the defendant is the only person who could have contradicted it (*Herrett*, 137 Ill. 2d at 211), if the comments are not intended or calculated to direct the jury's attention to the defendant's failure to testify. (*People v. Moore* (1991), 215 Ill. App. 3d 836, 842-43.) Further, prosecutorial comments based on facts in evidence, or reasonable inferences drawn therefrom, fall within the bounds of proper argument, and prosecutorial comments that are invited by the defense and are not prejudicial do not constitute error. *People v. Franklin* (1990), 135 Ill. 2d 78, 100.

In its opening statement, the defense revealed its theory that Katzensky and Schmitz were responsible for Shelton's murder.

Defense counsel attempted to prove this by cross-examining Katzensky and Schmitz and questioning whether they committed the murder. The State accurately stated during closing argument that the witnesses always responded negatively to such questions. We find that the State's comments during closing argument were not calculated to highlight defendant's failure to testify. Rather, the State's closing argument consisted of reasonable comments based on the evidence, invited by the defense, and not prejudicial to defendant. See *People v. Terry* (1988), 176 Ill. App. 3d 947, 950.

Although the State's comments may exceed the bounds of proper argument, the verdict must not be disturbed on review unless the remark clearly affected the outcome of the trial. (*Leger*, 149 Ill. 2d at 399.) We previously determined that the evidence in this case was not closely balanced, as there was substantial and uncontradicted evidence of defendant's guilt. Even assuming both of the State's comments were improper, we deem any error was harmless, as the record demonstrates that the comments were not a material factor in defendant's conviction, nor did they result in substantial prejudice to defendant's right to a fair trial.

### SENTENCING

In this case, the jury found defendant eligible for the death penalty on the basis that he murdered Shelton to prevent her from testifying or giving material assistance to the State in an investigation or prosecution of Mahlendorf's murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(8).) However, the jury found the existence of one or more mitigating factors sufficient to preclude the imposition of the death penalty. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c).) Thus, the judge imposed a sentence of natural-life imprisonment without parole as provided by section 5—8—1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b).) Defendant's final contention on appeal is that this case should be remanded for resentencing because the court abused its discretion in sentencing.

A trial judge is given broad discretion in fashioning an appropriate sentence. (*People v. Black* (1992), 223 Ill. App. 3d 630, 633.) The trial court's decision is given great weight and deference and will not be disturbed on review absent an abuse of discretion. (*People v. Wilson* (1991), 143 Ill. 2d 236, 250.) The reviewing court should not substitute its judgment for that of the trial court merely because it might have imposed a different sentence by balancing the aggravating and mitigating factors differently. *People v. Carlson* (1992), 224 Ill. App. 3d 1034, 1044.

We note that defendant's *pro se* post-trial motions filed after sentencing did not raise any issues relating to defendant's sentence. Further, a motion to reduce the sentence was not filed. *People v. Pfister* (1993), 240 Ill. App. 3d 931, 934-37, holding that some form of post-sentencing motion is required to preserve a sentencing issue for appeal, was not decided at the time defendant was sentenced. Notwithstanding the waiver rule of *Pfister*, we find the sentencing proceeding in the present case was so flawed that we choose to address the merits of the case on the basis of plain error. 134 Ill. 2d R. 615(a); see *Pfister*, 240 Ill. App. 3d at 937 (McLaren, J., dissenting); *People v. Hess* (1993), 241 Ill. App. 3d 276, 283.

In sentencing defendant to a term of natural-life imprisonment, the court commented as follows:

"One of the things that I have to take into consideration on sentencing anybody is the factors in aggravation and mitigation that are laid out in Chapter 38.

I'm going to consider three factors in aggravation. One, the defendant's conduct caused or threatened serious harm; three, the defendant has a history of prior delinquency or criminal activity; and seven, the sentence is necessary to deter others from committing the same crime.

As far as the factors listed in mitigation, I don't see where any of them apply here; therefore I'm not going to consider any of them."

The judge proceeded to reiterate the testimony presented in mitigation, including defendant's unfortunate upbringing with an abusive father, grammar school grades, testimony from various persons indicating that defendant is "a good guy," scores in attaining a GED certificate while incarcerated, and goals toward further education. However, he also cited defendant's criminal history, which includes several violent crimes, including battery, aggravated battery, armed robbery, theft, unlawful use of weapons, and felonious assault with a dangerous weapon. Then the judge stated as follows:

"If I were to listen to everything that everybody said today as well as combine that with what I heard in the hearing on aggravation and mitigation, I cannot place them under any of the factors in mitigation listed by the statute. I have to look at the strides you've made, but I pointed out the inconsistencies that I've seen in the testimony, the letters and the presentence report because for the last ten years or more you've been kind of doing the Dr. Jekyll and Mr. Hyde routine as far as I can see.

\* \* \*

The only thing that I can see or the only reason that I could see that Debbie Shelton was killed is exactly what the jury found. She was killed to keep her from possibly testifying against you in Wisconsin in the Mahlendorf death.

\* \* \*

I agree that [Shelton] probably didn't have any pain as far as she knew \*\*\*. The testimony was that she was addicted to cocaine. She was being fed cocaine, only in larger amounts than she thought she was receiving. And she was fed that until she kind of shook like a bowl of jelly and then the final injection was administered to her and then she sat in kind of a shed for the next three days and then was buried in the Fox River and right next to it for the next ten months.

Any sympathy that I think should have been afforded to you was given to you by the jury. I see no reason at all why I should give you any more sympathy. I admire you for what you have done since you've been in the jail, but I'm not going to consider that in my sentencing. It has nothing to do with the factors in mitigation. Mr. Markiewicz, I'm going to sentence you to life without parole."

Defendant asserts that the cause should be remanded for resentencing before a different judge because the sentencing judge abused his discretion by considering improper factors in aggravation and by failing to consider the mitigating evidence before the court.

Defendant contends that the court found Shelton felt no pain when she died. Because the death of the victim is inherent in the offense of murder, defendant asserts that the court abused its discretion by considering the degree of harm caused in imposing an aggravated sentence. We agree that the court may not consider the death of the victim in imposing an aggravated sentence for murder because death is implicit in the offense. (*People v. Saldivar* (1986), 113 Ill. 2d 256.) However, it is proper for the trial court to consider the force employed and the manner in which the death occurred in applying the serious bodily harm factor. (*Saldivar*, 113 Ill. 2d at 271; *People v. Nally* (1991), 216 Ill. App. 3d 742, 773-74.) We do not agree that the passage quoted above reveals that the sentencing judge placed improper emphasis on serious harm. The judge mentioned the manner in which Shelton was murdered and agreed that she probably felt no pain. We find this comment proper, as we do not necessarily equate the lack of pain with a lack of serious harm. Furthermore, the sentencing judge also considered the defendant's history of prior delin-

quency or criminal activity, the fact that a sentence of imprisonment was necessary to deter others from committing the same crime, and, most significantly, that a sentence of natural life was statutorily authorized because the jury found that defendant murdered Shelton to prevent her from revealing information about Mahlendorf's murder. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b).) Therefore, we find that the court did not abuse its discretion in applying aggravating factors, including serious harm.

Section 5—5—3.1(a) of the Unified Code of Corrections states that certain enumerated grounds "*shall* be accorded weight in favor of withholding or minimizing a sentence of imprisonment." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1(a).) As this language is mandatory rather than directory, the sentencing authority may not refuse to consider relevant evidence presented in mitigation. (See *Hitchcock v. Dugger* (1987), 481 U.S. 393, 398-99, 95 L. Ed. 2d 347, 353, 107 S. Ct. 1821, 1824; *Maxwell*, 148 Ill. 2d at 147.) This includes evidence that a defendant has adjusted well to incarceration. (*Skipper v. South Carolina* (1986), 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669; *People v. Turner* (1993), 156 Ill. 2d 354, 359; *People v. St. Pierre* (1992), 146 Ill. 2d 494, 514-15.) Although the sentencing body may not disregard evidence in mitigation, it may determine the weight attributed to relevant mitigating evidence. (*Maxwell*, 148 Ill. 2d at 148.) Thus, the existence of mitigating factors does not automatically oblige the trial court to reduce a sentence from the maximum allowed. (*People v. Smith* (1991), 214 Ill. App. 3d 327, 339.) Where mitigating evidence is before the court, it is presumed the court considered that evidence absent some contrary indication other than the sentence imposed. *People v. Willis* (1991), 210 Ill. App. 3d 379, 389-90.

●12 In this case, the sentencing judge stated on more than one occasion that he was not going to consider the evidence presented in mitigation because it did not fit into any of the categories enumerated in section 5—5—3.1 of the Unified Code of Corrections. At the sentencing hearing, defendant introduced evidence that he acquired a GED certificate while incarcerated and that he was motivated toward furthering his education. However, the sentencing judge stated that he admired defendant for furthering his education, but was not going to consider that in sentencing. This approach is flawed.

The sentencing body should consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and every aspect of his life relevant to the sentencing proceeding. (*People v. Scott* (1992), 148 Ill. 2d 479, 560; *People v. Barrow* (1989), 133 Ill.

2d 226, 281.) Defendant's educational efforts are relevant as they relate to his rehabilitative potential. As such, this, and other evidence presented in mitigation, should have been *considered* by the court.

The sentencing judge was statutorily entitled to render a sentence of natural-life imprisonment, as the jury found that defendant was eligible for the death penalty. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(1)(b), 9—1(b)(8).) However, contrary to the trial court's repeated comments, the court should have considered defendant's evidence presented in mitigation and determined that the aggravating factors outweighed the mitigating factors. (See *Scott*, 148 Ill. 2d at 559-60; *Maxwell*, 148 Ill. 2d at 147-48.) Although the sentencing judge reiterated the evidence in mitigation in sentencing, his comments state that he did not consider it. Accordingly, we find that the judge abused his discretion in failing to consider mitigating evidence in sentencing and remand this cause to the trial court for a new sentencing hearing.

On rehearing, defendant claims prejudice by the sentencing judge, Judge Thomas E. Hogan, and requests his remand for resentencing to be held before a different judge. Our review of the record indicates that Judge Hogan, who was also the trial judge, may have harbored a commitment to imposing the maximum possible penalty. During *voir dire*, Judge Hogan advised the jurors that, if they found a mitigating factor sufficient to preclude the death penalty, "[defendant] *would be* sentenced to life without parole in the penitentiary." (Emphasis added.) Although Judge Hogan was entitled to render this sentence, it was not mandatory, as the Unified Code of Corrections states that a term of natural-life imprisonment "may" be imposed for this felony. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b).) Accordingly, we remand this cause for resentencing before a judge other than Judge Hogan. See *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed in part and reversed in part, and the cause is remanded to the trial court for sentencing.

Affirmed in part; reversed in part and remanded.

UNVERZAGT and QUETSCH, JJ., concur.