**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231102-U

NO. 4-23-1102

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
June 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| THOMAS G. TRAYNOFF, | ) | No. 21CF150 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not abuse its discretion in sentencing defendant, as his sentence was not excessive and the court gave appropriate weight to a letter regarding defendant's financial support of his children and (2) trial counsel did not render ineffective assistance by not calling the mother of defendant's child as a witness at sentencing, as the matter was arguably one of strategy.

¶ 2    In October and November 2021, the State charged defendant, Thomas G. Traynoff, with aggravated battery to a pregnant person, a Class 3 felony (720 ILCS 5/12-3.05(d)(2) (West 2020)), and two counts of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2020)), one a Class 4 felony and the other a Class A misdemeanor, in connection with defendant's act of grabbing the face of H.H., who is referred to in some locations in the record as defendant's wife and in others as his fiancée or girlfriend. Defendant subsequently entered a negotiated guilty plea to the aggravated battery charge and was placed on probation. In April

2023, defendant was found to have violated his probation, and a new sentencing hearing was held in May 2023.

¶ 3        At sentencing, defendant provided evidence he had a child with H.H. and additional children with another woman. Defendant submitted a letter from H.H. stating he was their "sole provider." However, while the trial court discussed the impact incarceration would have on the children, the court stated there was no evidence regarding defendant's financial role in caring for his children. The court sentenced defendant to three-and-one-half-years' incarceration. Defendant raised the issue of his financial support in a motion to reconsider the sentence. At the hearing on the motion, the court stated it gave little weight to H.H.'s letter because it was uncorroborated and not subject to cross-examination. On appeal, defendant contends the court failed to properly consider his financial support of his children in mitigation. In the alternative, he contends his trial counsel rendered ineffective assistance by failing to call H.H. as a witness. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        Defendant was charged in connection with an incident in which he grabbed H.H.'s face in an aggressive manner while she was pregnant. In November 2021, defendant filed a motion to lift a bond condition precluding contact with H.H. Defendant included an affidavit from H.H. averring (1) she made statements that were misinterpreted by the police, (2) defendant did not strike, harm, or harass her, (3) a mark on her face at the time of defendant's arrest was not the result of a physical altercation with him, and (4) she wished to have the bond condition lifted so she could continue to communicate with him.

¶ 6        In December 2021, defendant entered a negotiated plea of guilty to the aggravated battery charge. In exchange, the State dismissed the remaining charges and recommended a

sentence of 30 months' probation, a $2750 fine, and 180 days in jail. The trial court sentenced defendant in accordance with the plea recommendation and with various conditions, including he (1) complete a drug and alcohol evaluation and treatment, (2) complete a domestic violence evaluation and treatment, (3) have no contact with H.H. of an abusive or harassing nature, and (4) live with his mother until the domestic violence treatment was completed.

¶ 7　　　　In October 2022, the State filed a petition to revoke defendant's probation, alleging he violated the terms of his probation in multiple respects, including by (1) consuming alcohol, (2) failing to complete a domestic violence evaluation and obtain treatment, and (3) having contact with H.H. of an abusive or harassing nature. In April 2023, the trial court found defendant violated his probation after defendant admitted the allegation he consumed alcohol.

¶ 8　　　　On May 30, 2023, the trial court held the sentencing hearing. The presentence investigation report (PSI) showed defendant had a criminal history, including multiple convictions of drug offenses and driving under the influence. He reported he was single and the father of five children, one of whom was deceased. Three of the children lived with their birth mother in Tremont, Illinois. The other lived with H.H. Defendant stated he saw the children every weekend.

¶ 9　　　　Defendant tested positive for methamphetamine in June 2021 and for alcohol in February and March 2023. As of April 11, 2023, defendant was enrolled in an outpatient program for substance abuse treatment. He tested negative for drug use multiple times in May 2023.

¶ 10　　　　A September 2021 pretrial bond report stated defendant earned $300 per week working part-time as a handyman or doing lawn service. The PSI reported he was employed

with Louck Farms but did not list a salary amount. In addition, defendant provided a letter dated January 3, 2023, stating he had been "randomly employed" since 2019 to help a woman with handyman work. Defendant reported expenses of $550 rent and $1000 fines and costs. He did not list any child support obligations.

¶ 11 Michael Parsons, defendant's probation officer, testified defendant had not been compliant with probation. Parsons testified defendant had multiple positive drug screens and had not been residing at the correct address.

¶ 12 Defendant submitted a letter from H.H., stating defendant was a "good man" who treated her well. H.H. wrote things had been going well for the past year. H.H. also wrote, "I beg that you also consider that he is the sole provider for our family in which we have a baby together plus 4 other children who rely on him for support, stability, and all of our financial needs." H.H. added defendant was a good father and partner and wrote, "we really need him home with us." The letter appeared to be dated January 9, 2022, but with the 2022 possibly written over to read 2023.

¶ 13 In an undated letter, Cory Gouliard wrote he was the stepfather to defendant's three young daughters. He wrote defendant was "a loving father who would do anything in his power to provide [the children] with the most stable life possible; spiritually, mentally, emotionally and financially." Gouliard also wrote, "Raising the girls over the past two years and becoming a first-time father myself in that time, it has taught me one thing: [defendant's] girls need their father. They need him physically, sober and spiritually present, not visiting him week after week in some distant downstate prison."

¶ 14 Defendant's three daughters wrote undated letters in support of defendant, stating he was a good father. In one letter, a child wrote defendant "spends money on us." However,

she also wrote, "We have only got to see him on the weekends for awhile." She added summers were fun because the children got to stay with him, while "[m]y mom and step-dad go to work and come home going straight to bed or cleaning so they don't have much time."

¶ 15        Defendant made a statement in allocution, telling the trial court he had been working full-time since December, which had given him the ability to consistently support his family and positively impacted his motivation and sobriety. Defendant also spoke about his treatment program and expressed remorse for his actions.

¶ 16        The State questioned defendant's credibility and noted he had a likelihood of recidivism based on his criminal history. The State asked the trial court to impose a term of five years' incarceration. The defense asked the court to continue defendant's probation.

¶ 17        The trial court sentenced defendant to three-and-one-half-years' incarceration. In mitigation, the court found defendant had minor children and noted the impact incarceration would have on them. The court found the children resided with their birth mothers and not with defendant. The court also found defendant spent time with the children on weekends and played an important role in their lives, and the children had strong feelings for him. However, the court also stated, "There was no testimony or evidence presented to the court as far as the role of the defendant in the financial support of his children." The court also recognized defendant had made efforts in the past month to address his drug use.

¶ 18        In aggravation, the trial court found defendant's conduct caused or threatened harm to another person, and defendant had an extensive history of criminal activity. The court also found it necessary to impose a sentence to deter others from committing the same crime. Ultimately, the court stated it was not sentencing defendant to the five-year term requested by the State based on the factors provided in mitigation.

¶ 19 On June 20, 2023, defendant filed a motion to reconsider his sentence, arguing the sentence was excessive because the trial court failed to properly consider the financial impact incarceration would have on defendant's children and H.H., given H.H. provided a letter stating he was the sole financial provider for his family. At the hearing on the motion, the court stated, "the only evidence that we ever received was by way of a letter from [H.H.], who was not subject to cross-examination at the sentence hearing, which stated that the defendant was her sole source of support." The court then stated it "did not give a lot of weight to that statement because that was the statement that was not subjected to cross-examination by the State nor corroborated by anything else." The court further stated it weighed all of the appropriate statutory factors in aggravation and mitigation, and given the nature and circumstances of the offense and the history, character, and condition of defendant, it entered an appropriate sentence. Thus, the court denied the motion.

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, defendant contends the trial court abused its discretion in imposing his sentence. Specifically, defendant argues the court failed to consider he was the sole provider for his family as a mitigating factor. In the alternative, he maintains he received ineffective assistance based on counsel's failure to call H.H. as a witness.

¶ 23 A. Application of Mitigating Factors

¶ 24 Defendant first contends his sentence was excessive because the trial court failed to consider his financial support of his children and H.H.

¶ 25 A trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). "The trial court must base its sentencing

- 6 -

determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "It is also required to consider statutory factors in mitigation and aggravation; however, 'the court need not recite and assign a value to each factor it has considered.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19, 143 N.E.3d 794 (quoting *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494). The sentencing court may not refuse to consider relevant evidence presented in mitigation, but it may determine the weight to give to such evidence. *People v. Markiewicz*, 246 Ill. App. 3d 31, 55, 615 N.E.2d 869, 886 (1993). "[I]t is presumed that the trial court considered the evidence in mitigation absent any contrary indication in the record." *People v. Anderson*, 325 Ill. App. 3d 624, 637, 759 N.E.2d 83, 94 (2001).

¶ 26        "On review, the sentence imposed by the trial court will not be reversed absent an abuse of discretion." *Pina*, 2019 IL App (4th) 170614, ¶ 20. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54, 723 N.E.2d at 210).

¶ 27        "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *Fern*, 189 Ill. 2d at 53, 723 N.E.2d at 209. "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed

these factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 213, 940 N.E.2d 1062, 1066 (2010).

¶ 28 Here, defendant was convicted of aggravated battery to a pregnant person, a Class 3 felony with a sentencing range of two to five years' incarceration. 720 ILCS 5/12-3.05(d)(2), (h) (West 2020); 730 ILCS 5/5-4.5-40(a) (West 2022). Defendant's sentence was well within that range. Section 5-5-3.1(a) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a) (West 2022)) lists grounds for which the trial court shall accord "weight in favor of withholding or minimizing a sentence of imprisonment." Defendant argues the court failed to consider he was the parent of a child whose well-being would be negatively affected by his absence, particularly based on his financial support of the child. See 730 ILCS 5/5-5-3.1(a)(18)(F) (West 2022). However, in support of that factor in mitigation, defendant presented only an uncorroborated letter from H.H. with an uncertain date, stating defendant was the sole provider for his family. As the court noted, H.H.'s assertion concerning defendant's financial support was not subject to cross-examination. Further, that assertion was not only uncorroborated, but it was also contradicted by other material in the record. The record generally showed defendant did not live with H.H. or his children, and his financial statements did not list any financial obligations to H.H. or his family. Defendant had only recently been employed full-time. Letters from defendant's three oldest children and from Gouliard showed those children's mother and Gouliard were raising the children and providing for them. Further, at the hearing on the motion to reconsider his sentence, the court specifically stated it considered the letter but gave it little weight. Thus, the record does not support defendant's assertion the court failed to consider the factor in mitigation. Instead, defendant essentially asks this court to reweigh the evidence, which we cannot do. Accordingly, the court did not abuse its discretion in imposing the sentence.

¶ 29                              B. Ineffective Assistance of Counsel

¶ 30          Defendant next argues his counsel rendered ineffective assistance by failing to call H.H. as a witness to establish his support of H.H. and their child.

¶ 31          "Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Cathey*, 2012 IL 111746, ¶ 23, 965 N.E.2d 1109. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). To establish prejudice, the defendant must show, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). "Counsel's performance is measured by an objective standard of competence under prevailing professional norms." *People v. Smith*, 195 Ill. 2d 179, 188, 745 N.E.2d 1194, 1200 (2000).

¶ 32          With respect to the first prong of *Strickland*, a defendant must overcome a "strong presumption" his or her counsel's conduct falls within the wide range of reasonable professional assistance and the challenged conduct constitutes sound trial strategy. *People v. Arroyo*, 339 Ill. App. 3d 137, 154, 790 N.E.2d 943, 958 (2003) (citing *Strickland*, 466 U.S. at 689). "Strategic choices made by defense counsel following a thorough investigation into the law and facts relevant to a defendant's plausible options are virtually unchallengeable." *Arroyo*, 339 Ill. App. 3d at 154-55, 790 N.E.2d at 958 (2003). "Accordingly, '[c]ounsel's decision whether to present a particular witness is generally a strategic choice which cannot support a claim of ineffective

assistance of counsel.' " *Arroyo*, 339 Ill. App. 3d at 155, 790 N.E.2d at 959 (quoting *People v. Richardson*, 189 Ill. 2d 401, 414, 727 N.E.2d 362, 370 (2000)). It is the defendant's burden to overcome the presumption counsel's decision not to call a witness was a matter of strategy. *People v. Whittaker*, 199 Ill. App. 3d 621, 628, 557 N.E.2d 468, 472 (1990).

¶ 33 Here, defendant is unable to overcome the presumption counsel's decision not to call H.H. as a witness was a matter of strategy. The record indicates H.H. changed her story between the time of defendant's arrest and plea. As part of a motion to change the bond condition precluding defendant from having contact with H.H., defendant presented H.H.'s affidavit, in which she denied there was a physical altercation or that defendant harmed her. H.H. further averred she wished to have the bond condition lifted so she could continue to communicate with defendant. Had H.H. testified, she would have been subject to cross-examination on that matter, with the implication being she was untruthful so that she could see defendant again. Further, H.H.'s letter was, at a minimum, at least four months old at the time of sentencing, and the record indicated defendant did not actually live with or support H.H. and their child. Those matters also would have been subject to additional scrutiny had H.H. testified. Thus, is not outside the realm of a reasonable defense strategy to conclude H.H. would lack credibility as a witness and it was better not to call her. Accordingly, defendant has not shown ineffective assistance of counsel.

¶ 34 III. CONCLUSION

¶ 35 For the reasons stated, we affirm the trial court's judgment.

¶ 36 Affirmed.

- 10 -