(No. 71363.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DINO TITONE, Appellant.

*Opinion filed September 24, 1992.*

20

Ian Ayres and Thomas F. Geraghty, of Chicago, and James T. Phalen, Cynthia Woolley, Kelly Deere, Jared Bartie and William Colman, law students, for appellant.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Dino Titone, appeals from circuit court of Cook County Judge Earl E. Strayhorn's partial dismissal of his post-conviction petition wherein Judge Strayhorn, without conducting an evidentiary hearing, dismissed the defendant's claims that he was denied due process at trial and during his first direct appeal to this court. Judge Strayhorn granted the portion of defendant's post-conviction petition seeking to vacate the defendant's death sentence. No sentencing issues are raised by this appeal. This court previously affirmed the defendant's convictions and sentence on direct appeal. (*People v. Titone* (1986), 115 Ill. 2d 413.) Since the facts underlying the defendant's convictions are discussed in detail in the defendant's first direct appeal, we will set forth only those facts relevant to a determination of whether Judge Strayhorn erred in partially dismissing the defendant's post-conviction petition without conducting an evidentiary hearing.

## FACTS

At approximately 2 a.m. on December 12, 1982, the defendant, along with codefendants Robert Gacho and Joseph Sorrentino, robbed, kidnapped and murdered Aldo Fratto and Tullio Infelise, who were cocaine dealers. The defendants tied the victims' hands behind their backs, took them at gunpoint to a deserted location, shot them repeatedly and placed their bodies in the trunk of

Infelise's car. At approximately 9:15 a.m., a Du Page County forest preserve ranger spotted the deserted car and heard sounds coming from the trunk. When paramedics arrived at the scene, Fratto had died as a result of five gunshot wounds to the head, chest and abdomen. Infelise was treated at Good Samaritan Hospital in Downers Grove, Illinois, from December 12, 1982, until he died on December 28, 1982, as a result of multiple gunshot wounds to the chest and abdomen.

In an indictment returned in the circuit court of Cook County, the defendant, Robert Gacho, and Joseph Sorrentino were charged in eight counts with the murders (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)) of Aldo Fratto and Tullio Infelise, in two counts with armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)), and in four counts with the aggravated kidnapping (Ill. Rev. Stat. 1981, ch. 38, pars. 10—2(a)(3), (a)(5)). Defendant, Gacho, and Sorrentino were granted severances. Defendant waived his right to a jury trial and received a bench trial before Circuit Judge Thomas J. Maloney, which trial was conducted simultaneously with the jury trial of codefendant Gacho. Defendant was convicted on all counts of the indictment and was sentenced to death. Defendant's convictions and sentences were affirmed on direct appeal. (*People v. Titone* (1986), 115 Ill. 2d 413.) Defendant's petition for writ of *certiorari* was denied by the United States Supreme Court. Subsequently, the defendant filed his post-conviction petition, which was partially denied and is the basis for the instant appeal. Defendant erroneously filed his notice of appeal with the appellate court, but this court granted the State's motion for direct appeal under Supreme Court Rule 302(b) (134 Ill. 2d R. 302(b)). This court has jurisdiction over the instant appeal pursuant to Supreme Court Rule 651(a) (134 Ill. 2d R. 651(a)).

On appeal, the defendant argues that post-conviction Circuit Judge Earl E. Strayhorn abused his discretion in denying the defendant's constitutional claims without conducting an evidentiary hearing. Specifically, the defendant argues that he made a substantial showing that he was denied due process for six reasons: (1) that Judge Maloney erroneously relied on evidence presented in codefendant Gacho's case as a basis for defendant's conviction; (2) that the defendant was a victim of conspiracy and extortion between his counsel, Bruce Roth, and Circuit Judge Thomas Maloney; (3) that attorney Roth was facing a rising tide of devastating personal problems that rendered his trial representation ineffective; (4) that the admission of the State's eyewitness Katherine DeWulf's prior consistent statement denied the defendant a fair trial; (5) that defendant was denied his constitutional right to remain silent; and (6) that defendant was denied effective assistance of counsel on his first direct appeal to this court. We find no merit to the defendant's arguments and affirm.

## STANDARD OF REVIEW

At a hearing under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*), the burden is on the defendant to establish a substantial deprivation of rights under the United States Constitution or the Constitution of Illinois and determinations by the trial court will not be disturbed unless manifestly erroneous. (*People v. Griffin* (1985), 109 Ill. 2d 293, 303.) A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. (Ill. Rev. Stat. 1983, ch. 38, par. 122—6.) Rather, the petitioner must make a " 'substantial showing of a violation of constitutional rights.' " (*People v. Evans* (1967), 37 Ill. 2d 27, 30, quoting *People v. Reeves* (1952), 412 Ill. 555, 560.) To accomplish this, the "allegations in the petition must be sup-

ported by the record in the case or by accompanying affidavits, unless their absence is sufficiently explained." *People v. Curtis* (1971), 48 Ill. 2d 25, 27-28.

## WHETHER TRIAL COURT IMPROPERLY CONSIDERED EVIDENCE OUTSIDE THE RECORD

The defendant contends that he was denied a fair trial and his right to confront witnesses, because the trial court improperly considered evidence outside the record. This claim could have been presented to this court during the defendant's first direct appeal and is therefore barred by the doctrine of waiver. (*People v. Silagy* (1987), 116 Ill. 2d 357.) Notwithstanding waiver, however, we have examined the claim and have found it meritless.

During oral argument before this court, defendant's counsel, Ian Ayres, argued that the "most important fact before this court on appeal" is that Circuit Judge Thomas Maloney stated the following in finding the defendant guilty: "It is significant that the Jury required but little more than an hour to reach their verdicts of guilty as to Defendant Gacho. It indicates that they believed the Witness Kathy DeWulf totally; \*\*\*." Defendant argues that this quote "plainly" shows that Judge Maloney considered improper evidence introduced at codefendant Gacho's trial, which is not part of the defendant's record, and that as a result the defendant was substantially prejudiced. This quote, however, must be viewed in its proper, unabbreviated context. In convicting the defendant, it is clear that Judge Maloney made his own independent determination that the State's key eyewitness, Kathy DeWulf, was credible:

> "In this case there is no question in the evidence but that the witness DeWulf knew the defendant and that he knew her. There was no question that was removed in the evidence that was heard, and she testified that on the

night in question that she, Miss DeWulf, saw the defendant in this case follow the two victims out of the Gacho house and get into a car with them.

She was at the scene of the shooting, or shootings, I should say. [He] afterwards got in the car with her and the others and immediately, after the shootings, he talked and laughed with the others about what he and they had done as they drove.

The Court, along with the Jury in this case, in that it was a simultaneous Jury and Bench trial, heard and observed each witness who testified. It is significant that the Jury required but little more than an hour to reach their verdicts of guilty as to the Defendant Gacho. It indicates that they believed the Witness Kathy DeWulf totally; *and the Court, having heard and observed her, concurs with the Jury's assessment of Kathy DeWulf.*

She was a young woman who became involved with the Defendant Gacho, evidently enamoured of him, and throughout the entire course of the events that the Court heard in this case, he used and manipulated her. But in spite of what she has been through with him, *she was on the witness stand in this courtroom a thoroughly and completely credible witness.*

The statement that she made to the police on the day after the murders is consistent with her testimony in this case. Her lineup identification of the defendant Titone the morning after the day after the shootings in this case is consistent with her testimony in this case and with the evidence.

Although the influence exerted over her by Gacho evidently caused her at one time to make a contradictory statement to a defense attorney, it was for no other reason than that, that that influence continued to exert itself.

Within the law she may very well be considered an accomplice, but in the entire context of this case, it is a very claim that this factor was not motivational with respect to her testimony.

For those reasons, the Court finds that the evidence in this case establishes the proof of guilt of the Defend-

ant Dino Titone beyond a reasonable doubt as to each count in the indictment, ***." (Emphasis added.)

It is apparent from a full review of Judge Maloney's remarks that he did not engage in a "private investigation" to extract from jurors of codefendant Gacho's trial their opinions of DeWulf's credibility. Instead, Judge Maloney, after seeing and hearing the testimony of Katherine DeWulf himself, found that she was "a thoroughly and completely credible witness." Accordingly, there is nothing to support the defendant's contention that Judge Maloney *relied* on evidence outside of the record to reach his ruling. *People v. Moody* (1983), 94 Ill. 2d 1, 10-11.

Moreover, the defendant claims that Judge Maloney considered evidence outside of the record in finding the defendant guilty of armed robbery and in ruling on various objections, indicating that he attributed evidence in Gacho's trial against the defendant. There is simply no support in the record to support these allegations. Additionally, they are deemed waived.

## BRIBERY/CONSPIRACY BETWEEN DEFENSE COUNSEL AND TRIAL JUDGE

The defendant next maintains that he was denied a fair trial before an impartial fact finder because of an illicit bribery conspiracy between his attorney, Bruce Roth, and Circuit Judge Thomas J. Maloney. Attorney Roth has been disbarred and is presently serving a 10-year sentence on Federal charges arising out of the undercover investigation known as "Operation Greylord" (on charges unrelated to the instant appeal). Judge Maloney has been implicated in "Operation Greylord," but this court has denied the defendant's motion to supplement the record with information regarding the investigation of Judge Maloney since these claims are not related to the instant appeal.

The defendant supports his post-conviction petition with regard to the bribery conspiracy issue by attaching the following affidavits: (1) an affidavit from Ian Ayres, defendant's post-conviction counsel; (2) an affidavit from Salvatore Titone, the father of Dino Titone; and (3) an affidavit from the defendant, Dino Titone.

Ian Ayres' affidavit stated that he had several conversations with attorney Roth at Chicago Metropolitan Correctional Center concerning Roth's representation of Dino Titone. Roth told Ayres that if Roth succeeded in "cutting a deal" with the Federal authorities that Dino Titone should "have no trouble getting a new trial." Roth further told Ayres, "I never gave Maloney money directly," but added that "everything is not black and white."

Salvatore Titone's affidavit stated that attorney Roth approached him and suggested that "Dino could walk [could go free] if I paid him some extra money." The extra money was to be used to pay Judge Thomas Maloney to fix the case. Salvatore Titone then paid Roth $10,000 to fix the case. Salvatore Titone was unsure why his son was eventually found guilty and sentenced to death by Judge Maloney.

The defendant's affidavit stated that when Roth started to represent him on this case, Roth told him that he "would find a judge that he could work with." According to the defendant, "It became clear to me that he was talking about finding a judge that he could bribe so that I would not be found guilty." The defendant's affidavit further stated that Roth substituted Judge Maloney in place of Judge John J. Crowley, since Judge Maloney could be bribed. The defendant stated that he knew his father had "paid Roth $10,000 to fix the case so that I could be set free." Finally, the defendant's affidavit stated the following:

"I am not sure why Judge Maloney convicted me after the case had been fixed, but Roth had indicated to me that a deal had been made. I believe that I was convicted either because Roth failed to live up to his bargain and pay Judge Maloney the $10,000, or because Judge Maloney was scared about Greylord and his re-election and wanted to prove that there was no fix."

Two things are apparent to this court from these sordid affidavit statements. First, no direct evidence was presented that Judge Maloney solicited, received, or agreed to accept a bribe to influence his decision in the defendant's case. (Ill. Rev. Stat. 1985, ch. 38, par. 33—1(e).) Second, merely because Judge Maloney has been implicated of specific impropriety with regard to other, nonrelated cases, this cannot serve to taint all other decisions with which Judge Maloney has been involved.

Initially, it must be pointed out that the defendant's bribery allegation appears for the first time in his post-conviction petition. Undeniably, the defendant would have been put on notice that the alleged bribery scheme was unsuccessful when he was convicted and later sentenced to death by Judge Maloney. Accordingly, since no claim of judicial prejudice was raised during defendant's first direct appeal, the claim is waived. (*People v. Silagy* (1987), 116 Ill. 2d 357.) Regardless of waiver, we have examined the claim and find it without merit.

The affidavits accompanying the post-conviction petition do not substantially support the alleged bribery scheme. This court has stated that "[t]he gist of the offense of bribery is the giving to and receiving or accepting money or other valuable thing by a public officer to influence him with respect to the performance of his official duty." (*People v. Siciliano* (1954), 4 Ill. 2d 581, 586.) Prior to January 1, 1986, section 33—1(e) of the Criminal Code of 1961 provided as follows:

"§33—1. Bribery. A person commits bribery when:

* * *

(e) He solicits any property or personal advantage which he is not authorized by law to accept pursuant to an understanding that he shall influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness." (Ill. Rev. Stat. 1983, ch. 38, par. 33–1(e).)

The affidavits and the record are devoid of any direct evidence that Judge Maloney solicited, received, or accepted any money to influence his decision in the instant case. As such, the defendant's claim must fail.

Also, the fact that Judge Maloney is presently under investigation in nonrelated cases arising out of his tenure as a Cook County circuit judge is not germane to the facts in the instant case. To rule otherwise would result in reversing the multitude of decisions with which Judge Maloney was associated between the years 1981 and 1986. A similar situation was recently addressed by the Superior Court of Pennsylvania in *Commonwealth of Pennsylvania v. Shaw* (1990), 398 Pa. Super. 341, 580 A.2d 1379, wherein the court was called upon to determine whether a defendant is denied due process of law where, in a nonjury trial in which he was found guilty, the trial judge failed to disclose that he demanded and/or accepted bribes from other defendants in 1986, at or near the time of defendant's trial. The *Shaw* court found that in order to support a claim of judicial bias, two requirements must be met: (1) the petitioner must establish a nexus between the activities being investigated and the trial judge's conduct at trial; and (2) the petitioner must allege and establish actual bias resulting from the trial judge's extrajudicial conduct. In applying this standard, the *Shaw* court stated as follows:

"Appellant's claim of bias, *i.e.* that because the trial judge 'solicited and received bribes' in some cases, he had to convict without regard to guilt or innocence in other

cases to 'show *** that there is a real need for the bribe to obtain a favorable result,' *see* Appellant's Brief at 9, is wholly unsubstantiated in the record before this Court on appeal. Appellant's mere speculation is not sufficient. *See Commonwealth v. Hewett, supra,* 551 A.2d at 1083. Moreover, no ruling of the trial judge and no specific event or incident which occurred during the trial gave rise to any question as to the trial judge's objectivity or to the propriety of his rulings. *See id.* at 1085. As appellant has been unable to establish actual prejudice resulting from the trial judge's extrajudicial conduct, this claim fails." (*Commonwealth of Pennsylvania v. Shaw* (1990), 398 Pa. Super. 341, 343, 580 A.2d 1379, 1381.)

We agree with the reasoning enunciated in *Shaw.* In applying the rationale of *Shaw* to the facts of this case, the defendant has likewise failed to show a requisite nexus between his allegations of judicial bias at trial and the "Operation Greylord" investigation involving Judge Maloney, and has further failed to establish any actual prejudice. Therefore, the defendant's claim is meritless.

In summary, the defendant's post-conviction petition has failed to set forth a substantial showing that he was denied a fair trial due to any alleged bribery scheme. Thus, we cannot find that Circuit Judge Strayhorn's decision not to conduct an evidentiary hearing with regard to this issue was manifestly erroneous.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant next contends that he was denied a fair trial because his counsel, during that time, was experiencing an "avalanche" of personal problems. Specifically, the defendant states that during the defendant's trial, attorney Roth: (1) was a target of "Operation Greylord"; (2) was defending a State indictment for allegedly suborning the perjury of a witness; and (3) was distracted by his wife's catastrophic illness with multiple sclerosis. The defendant maintains that this "tremendous

outside pressure" created a *per se* conflict of interest that rendered his trial performance ineffective. The *per se* conflict of interest standard asserted by the defendant, however, does not apply to the ineffective-assistance-of-counsel claim raised by this appeal. (See *People v. Spreitzer* (1988), 123 Ill. 2d 1, 16 (where court held that the term *"per se* conflict" applies only to class of cases where the defense counsel had a tie to a person or entity which would benefit from an unfavorable verdict for the defendant).) Rather, this court must analyze the defendant's ineffective-assistance-of-counsel claim in light of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

*Strickland* requires that the defendant prove: (1) that "counsel's performance was deficient" in that it "fell below an objective standard of reasonableness"; and (2) that the "deficient performance prejudiced the defense" such that defendant was deprived of a fair trial whose result was reliable (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064). We find that defendant did not establish either requirement.

A careful review of the record reveals that defense counsel provided a strong, vigorous defense both prior to trial and during trial. Prior to trial, attorney Roth, among other acts, represented the defendant in the following manner: (1) he strenuously argued and moved that the State produce any statements made by Katherine DeWulf regarding the merits of the case while in meetings with attorneys for the State, which the trial court granted; (2) he requested copies of life insurance policies allegedly taken out by the decedent/victims' wives a month prior to the incident; (3) he forcefully argued that he should be entitled to one more interview with Katherine DeWulf prior to trial to see if the State had made any threats or promises so as to coerce Katherine DeWulf from not changing her story, which

opportunity was granted; (4) he filed a motion *in limine* which successfully kept out a portion of the statements from victim Tullio Infelise taken at Good Samaritan Hospital which potentially implicated the defendant in the crime; and (5) he emphasized to Judge Maloney that he would have a standing objection to any evidence brought out in codefendant Gacho's jury trial that would be irrelevant, immaterial, and inadmissible in the defendant's simultaneous bench trial.

Similarly, during trial, Roth provided effective representation. Attorney Roth, in response to the State's attempts to introduce the portion of Tullio Infelise's statements at Good Samaritan Hospital, which was the subject of defense counsel's successful motion *in limine*, stated, "On behalf of Mr. Titone, obviously I strenuously object, and I hope that the court will not consider this against my client." Defense counsel also repeatedly objected on hearsay grounds when the State introduced conversations between Katherine DeWulf and codefendant Gacho during the State's redirect examination of Katherine DeWulf. Attorney Roth additionally "totally objected" when the State tried to introduce into evidence Katherine DeWulf's police station statement. Overall, during the trial proceedings, attorney Roth objected to the introduction of evidence by the State over 20 times.

Additionally, the record reflects that, throughout the trial, defense attorney Roth did a thorough job of cross-examining the State's witnesses, including a vigorous cross-examination of Katherine DeWulf. Defense attorney Roth also strongly argued for a directed verdict at the close of the State's case in chief, claiming that the evidence showed that Katherine DeWulf was an accomplice, a drug user, a perjurer, and someone to whom the State had made promises of leniency.

The foregoing facts elicited from the common law record and the trial record, while by no means exhaustive, reveal that defense attorney Roth energetically represented the defendant and his representation in no way "fell below an objective standard of reasonableness." Moreover, in analyzing the specific allegations of error raised by defendant's ineffective-assistance-of-counsel claim, we find no merit to the contention that prejudice resulted denying the defendant a fair trial. The defendant maintains that attorney Roth was ineffective during trial for the following reasons: (1) counsel's alleged failure to pursue discovery procedures or adequately cross-examine Katherine DeWulf; (2) counsel's alleged failure to object to consideration of evidence outside the record; (3) counsel's alleged failure to create an adequate foundation for objection that defendant had the right to remain silent; (4) counsel's failure to investigate and introduce exculpatory evidence; and (5) counsel's failure to advise defendant that waiving a trial would result in a simultaneous trial with codefendant Robert Gacho. The court has closely examined these alleged errors and finds that none of these alleged errors raise "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Stewart* (1990), 141 Ill. 2d 107, 118.

Finally, the defendant argues that attorney Roth's participation in an alleged bribery scheme constituted *per se* ineffective assistance of counsel, since Roth had no incentive to prepare a meaningful defense. This argument fails for three reasons. First, the record reflects that the defendant willingly pursued the alleged bribery strategy of attorney Roth, and thus received the representation of his choice. (See *People v. Johnson* (1979), 75 Ill. 2d 180 (where court held that a defendant may waive

his right to competent counsel in order to receive the representation of his choice).) Second, there is no direct evidence that attorney Roth ever followed through on any alleged bribery scheme. Third, the record below reveals that attorney Roth was a spirited advocate who provided an effective defense.

## ADMISSION OF KATHERINE DeWULF'S PRIOR CONSISTENT STATEMENT

The defendant contends that his sixth amendment right to confront witnesses was violated when the State was allowed to introduce Katherine DeWulf's prior consistent statement taken at the Burbank police station. This exact argument was considered and rejected by this court during the defendant's first direct appeal. (*People v. Titone* (1986), 115 Ill. 2d 413, 423.) Accordingly, reconsideration of this issue is barred by the doctrine of *res judicata. People v. Silagy* (1987), 116 Ill. 2d 357, 365.

## RIGHT TO REMAIN SILENT

Citing *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the defendant argues that his right to remain silent was violated when the State was permitted to impeach defendant's exculpatory testimony by questioning him concerning his failure, at the time of his arrest, to tell the police where he was on the night of the murders. This matter is *res judicata* since this court considered the same argument on direct appeal and ruled the error, if any, to be harmless beyond a reasonable doubt. *People v. Titone* (1986), 115 Ill. 2d 413, 425.

## INEFFECTIVE ASSISTANCE OF COUNSEL DURING FIRST DIRECT APPEAL

Lastly, the defendant claims that he was deprived of effective appellate counsel during his first direct appeal

to this court. Similar to the ineffective-assistance-of-counsel allegations raised concerning attorney Roth's performance during trial, the defendant maintains that attorney Roth was laboring under the same extraordinary personal problems during his representation of the defendant during defendant's first direct appeal. The defendant further contends that Roth's representation of the defendant during the first direct appeal was objectively unreasonable, since the brief he filed was short, he allegedly failed to raise three meritorious issues on appeal, and he failed to limit the record on appeal to exclude matters pertaining only to codefendant Gacho's simultaneous trial. We find that the defendant has failed to meet his burden of demonstrating that but for his appellate counsel's supposed errors, there was a reasonable probability that his conviction would have been reversed. (*People v. Stewart* (1990), 141 Ill. 2d 107, 119.) Therefore, the defendant's claim fails.

## CONCLUSION

As held by this court in the defendant's first direct appeal, the evidence presented against the defendant is more than ample to support a finding of guilt. (*People v. Titone* (1986), 115 Ill. 2d 413, 422.) Based on the foregoing, we find that Circuit Judge Earl E. Strayhorn did not err in dismissing the constitutional claims raised by defendant's post-conviction petition without conducting an evidentiary hearing.

For the above reasons, we affirm the judgment of the circuit court.

*Affirmed.*