UNITED STATES of America ex rel. William FRIERSON, Petitioner,

v.

Richard B. GRAMLEY, Respondent.

No. 96 C 1486.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 30, 1997.

William Frierson, Galesburg, IL, pro se.

Darryl Belmonte Simko, Illinois Attorney General's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court is a petition for a writ of habeas corpus and motion for appointment of counsel submitted by petitioner William Frierson. For the reasons that follow, the court denies both the motion for appointment of counsel and the petition for a writ of habeas corpus.

### I. BACKGROUND

■ Frierson was convicted by a jury in state court of two counts of aggravated criminal sexual assault for raping a woman who was paralyzed from the waist down and wheelchair-bound.[1] Frierson was sentenced to two concurrent 18–year terms of imprisonment. He appealed his conviction, which was affirmed. He petitioned for leave to appeal to the Illinois Supreme Court, which denied his petition. Frierson then filed a petition in

state court for post-conviction relief; his petition was denied. The appellate court affirmed the denial of Frierson's post-conviction petition, and the Illinois Supreme Court denied his petition for leave to appeal.

On March 14, 1996, Frierson filed in this court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his current petition, Frierson raises essentially three multi-faceted arguments. First, Frierson claims that he was denied an impartial jury because the trial court failed to excuse a juror who said she would have a problem treating fairly a defendant accused of rape and improperly allowed the use of blind peremptory challenges.

Frierson also alleges that his trial counsel were constitutionally ineffective, in that they failed to subpoena two witnesses who were present in the house where Frierson had sex with the victim; never told Frierson that he had a right to testify, and in fact told him that he could not testify, at his trial; and failed to obtain important medical records.

Finally, in his reply to the state's answer to his petition, Frierson claims that the trial court's refusal to permit him to impeach the victim concerning her prostitution activities deprived Frierson of his constitutional rights under the Sixth and Fourteenth Amendments to present his case and confront his accuser.

### II. DISCUSSION

#### A. Motion for appointment of counsel

■ In addition to his petition for a writ of habeas corpus, Frierson moves for appointment of counsel. Counsel is to be appointed in a habeas corpus proceeding if an evidentiary hearing is required or if the interests of justice so require. See Rule 8(c), Rules Governing Section 2254 Cases in the United

---

1. The facts underlying Frierson's conviction are set out fully in the opinion of the Illinois Appellate Court on direct review, *People v. Frierson,* No. 1–92–1170, slip. op. (1st Dist. Sept. 30, 1994), and need not be repeated here.

Because Frierson does not challenge the facts set forth in the Illinois Appellate Court's opinion affirming his conviction and sentence, this court presumes those facts correct for purposes of reviewing Frierson's habeas corpus petition. *See Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Smith v. Fairman,* 862 F.2d 630, 632 (7th Cir.1988), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989).

States District Courts; 18 U.S.C. § 3006A(a)(2)(B).

The court finds it unnecessary to hold an evidentiary hearing to decide Frierson's habeas petition. In addition, while Frierson is a *pro se* petitioner, he has presented the court with coherent and intelligible bases for his petition, including relevant law and facts, and the court is able to decide his petition based on the information he has provided. Thus, the interests of justice do not require appointment of counsel.

Accordingly, the court denies Frierson's motion for appointment of counsel.

## B. *Applicability of Antiterrorism and Effective Death Penalty Act*

■ The state contends that the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), effective April 24, 1996, applies to Frierson's petition even though his petition was filed prior to the effective date of the Act. Under the Act, federal habeas relief is not available for any claim adjudicated on the merits by a state court unless the state decision was contrary to, or an unreasonable application of, established federal law as determined by the United States Supreme Court, or the state court's determination of the facts was unreasonable in light of the evidence. Pub.L. 104–132, Tit. I, § 104(3), 110 Stat. 1219 (amending 28 U.S.C. § 2254(d)).

The state is correct. The Seventh Circuit recently has held that the amended section 2254(d) applies to cases that were pending at the time the Act took effect. *Lindh v. Murphy,* 96 F.3d 856, 867 (7th Cir.1996), *cert. granted in part,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). Accordingly, the court must evaluate Frierson's claims in light of the new standard set forth above.

## C. *Procedural default*

■ The court finds that Frierson presented to the Illinois appellate and supreme courts all of the grounds for relief that he set forth in his original habéas petition. Accordingly, Frierson has not procedurally defaulted any of the claims raised in his original petition, and the court will address each of these claims on its merits. *See Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640, *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991).

However, Frierson's claim, raised for the first time in his reply, that the trial court violated his constitutional rights to confront his accuser and present a defense by barring him from impeaching the victim with evidence of her prostitution activities is a different story. Therefore, the court will address the issue of procedural default as to that claim separately, in section F. below.

## D. *Right to an impartial jury*

Frierson argues that the trial court should have excused for cause a juror who stated that she did not know if she could be fair to a defendant who was accused of rape. Frierson also argues that the trial judge erred in using a system of blind peremptory challenges. Frierson alleges that these occurrences violated his Sixth Amendment right to an impartial jury.

### 1. Failure to excuse juror

■ During the *voir dire* in Frierson's criminal trial, the trial judge questioned a juror on her ability to sit impartially on the jury in Frierson's case. The judge asked, and the juror answered, the following:

Q: All right. And do you have any difficultly with sitting in this type of trial where the charge is that of aggravated criminal sexual assault case?

A: No, I do not.

Q: All right. Do you have any difficulty with the idea that you as a juror are to apply the law as I instruct you and not as—even if you might disagree with that?

A: I think I might have a problem with that.

Q: All right. You might?

A: Yes.

Q: All right. Well, let me ask you the—further the question [sic] in that regard, all right, as that question was asked, it is kind of speculative.

Can you better explain to me how you might have that difficulty?

A: Well, I think that in our society crimes against wom[e]n aren't taken as seriously as they should be.

Q: You say they are not taken seriously as they should be; is that correct?

A: Yes.

Q: Well, all right. That is a general attitude. You have characterized society and the legal system.

Now, the question I have of you is this: I have to instruct you as to the law, and it is your obligation to follow the law. And that doesn't have to do with the general assessment on how things are treated seriously or not seriously. Knowing that, do you think you will be able to sit as a juror in this case?

A: I think that I would have to follow the law. I don't think I have a choice.

Q: All right. Now, just because a person is accused of an offense, do you think you can give them a fair trial, even though they are charged with a sex offense, and the fact that you think society, in general, does not adequately— well, does not adequately consider the seriousness of the sex offenses against women[?]

So you think you are going to be able to give this man a fair trial?

A: I believe that people are innocent until proven guilty.

Q: All right. Here, more particular than that the question that I have [sic], and that is this: Given the general attitude that you say, in your estimation, this society does not seriously treat sex offenses against women, do you think that is going to prevent you from giving this person here a fair trial? That is my concern.

A: No.

Q: All right. Are you able to follow the law as I would instruct you?

A: I don't think I would have any choice.

Q: All right. Well, you certainly do.

A: Oh, I do? Okay.

Q: All right. Well, as a juror you are sworn to follow the law as the Court instructs, even if you might disagree with it. .... As a juror, the obligation of a juror is to apply the law as given. Do you have a problem with that?

A: No. I can do that.

(Answer Ex. K at A138–42.)

After this exchange, counsel for Frierson asked the judge for a sidebar, in which she moved to exclude the juror just questioned for cause. (*Id.* at A143.) Defense counsel stated that she believed that the juror could not give Frierson a fair trial because the juror initially had expressed reluctance to follow the law and said that she would have no choice but to follow the law, and had strong feelings about crimes against women. (*Id.* at 144.) Counsel stated that she was afraid that the juror would use this opportunity to speak out against Frierson, regardless of the evidence. (*Id.*)

The judge stated that the juror said she believed that society does not treat crimes against women as seriously as it should, which was the basis for the judge making further inquiry. (*Id.* at 145.) He stated that his further inquiry indicated to him that the juror could perform her duties as a juror despite her overall belief. (*Id.*) Therefore, the judge denied defense counsel's motion to excuse the juror for cause. (*Id.*)

In his petition for habeas relief, Frierson contends that the trial court's refusal to excuse the juror for cause deprived him of an impartial jury.

■ The question of whether an individual juror is impartial is one of historical fact: "did [the] juror swear that [she] could set aside any opinion [she] might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed[?]" *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). Accordingly, the federal habeas court gives the trial court's decision regarding whether the juror is impartial the statutory presumption of correctness required by 28 U.S.C. § 2254(d). *Id.* at 1038, 104 S.Ct. at 2892; *Grancorvitz v. Franklin*, 890 F.2d 34, 36 (7th Cir.1989), *cert. denied sub nom.*

*Grancorvitz v. Cooke,* 495 U.S. 959, 110 S.Ct. 2566, 109 L.Ed.2d 749 (1990). *See also* 28 U.S.C. § 2254(d) (stating that a state court determination "on the merits of a factual issue ... shall be presumed to be correct").

■ Under section 2254(d)'s presumption of correctness, the federal habeas court will reverse a state trial court determination only if it is not fairly supported by the record. *Grancorvitz,* 890 F.2d at 37. Thus, the question in this case is whether the record contains fair support for the trial court's decision that the juror challenged for cause by Frierson would be impartial. *See Patton,* 467 U.S. at 1038, 104 S.Ct. at 2892–93 (asking the same question). The court finds that it does.

Through his questioning, the trial judge elicited from the juror that she would follow the law as he instructed and that she would presume Frierson innocent until the evidence proved him guilty. Based on his colloquy with the juror, the trial judge was convinced that the juror would be impartial in spite of her general belief about crimes against women.

■ As the Supreme Court noted in *Patton,* it is in situations like the foregoing, where the juror gave potentially contradictory answers, that "the federal court's deference must operate, for while the cold record arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty." *Patton,* 467 U.S. at 1040, 104 S.Ct. at 2893.

This court defers to the trial judge's procedures and inquiry during *voir dire* and credibility determination regarding the juror's responses to his questions. *See Grancorvitz,* 890 F.2d at 37 (explaining application of presumption of correctness to issue of individual juror impartiality). In so doing, the court finds sufficient support in the record for the trial court's decision that the juror would sit impartially.

Accordingly, the court will not reverse the state trial court's determination regarding the juror's ability to sit impartially.

### 2. Use of blind challenges

■ Following *voir dire,* the trial court required the parties to exercise their peremptory challenges blindly—that is, by each party, simultaneously with the other party, indicating on a piece of paper which jurors it wanted to strike, without knowing who the other party was challenging. Frierson contends that this process restricted his right to challenge prospective jurors intelligently.

The defect in Frierson's contention is that the Supreme Court long ago held the blind strike method of peremptory challenges adequate to preserve a defendant's right to make peremptory challenges, *see Pointer v. United States,* 151 U.S. 396, 405–12, 14 S.Ct. 410, 413–16, 38 L.Ed. 208 (1894), and has not yet changed its mind. Thus, the trial court's decision to use the blind strike method of peremptory challenges, which the state appellate court addressed on the merits and affirmed, is not contrary to, or an unreasonable application of, established federal law as determined by the United States Supreme Court. *See* Pub.L. 104–132, Tit. I, § 104(3), 110 Stat. 1219 (amending 28 U.S.C. § 2254(d)).

### E. *Ineffective assistance of counsel*

Frierson raises three separate claims under the rubric of ineffective assistance of counsel. First, he claims that his counsel failed to subpoena two crucial, or any, witnesses for the defense. Second, he claims that his counsel not only did not tell him that he could testify at his trial, but affirmatively told him that he could not testify at his trial. Third, he claims that his counsel failed to obtain in advance of trial vital medical records that were used at trial.

A petitioner raising the claim of ineffective assistance of counsel must show that counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner also must show that counsel's performance prejudiced the defense; that is, but for counsel's performance, the result of the proceeding probably would have been

different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

When determining whether counsel's performance was defective, the court gives deference to counsel's decisions. A strong presumption exists that counsel's representation "falls within the wide range of reasonable professional assistance" and " 'might be considered sound trial strategy' ". *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. State of Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

### 1. Failure to call witnesses

▆▆▆▆ In his petition, Frierson contends that his counsel erred in not calling two crucial witnesses, or any witnesses, for his defense. The state's answer and Frierson's reply make clear that the two crucial witnesses are two people who were in the house where the rape occurred at the time of the rape. Frierson claims that these witnesses could have corroborated his defense of consent.

▆▆▆▆ "[T]he decision not to call a witness is a tactical choice that is not subject to review." *United States v. Loscalzo,* 18 F.3d 374, 385 (7th Cir.1994) (citing *Cartee v. Nix,* 803 F.2d 296, 303 (7th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987)). This is particularly true in this case, where Frierson's counsel knew about the two witnesses, whom counsel mentioned in opening statements. (*See* Answer Ex. L at B69.) Thus, the court presumes that defense counsel strategically chose not to call the two witnesses of whom they were aware.

Frierson has not presented anything to overcome the strong presumption that his counsel's failure to call witnesses "[fell] within the wide range of reasonable professional assistance" and " 'might be considered sound trial strategy' ". *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel,* 350 U.S. at 101, 76 S.Ct. at 164). Accordingly, the court does not find Frierson's counsel to be ineffective for not calling witnesses.

Moreover, even if Frierson's trial counsel's performance was constitutionally defective because of their failure to call the two witnesses, Frierson has not shown that his counsel's performance prejudiced the defense. The two witnesses purportedly would have testified that they heard no screams, cries, loud noises, or arguing at the time Frierson was having sex with the victim. (*See Pro Se* Reply Appendix.) According to Frierson, the witnesses' testimony would have supported his consent defense. However, the witnesses were in different rooms than where the rape occurred, and were not eyewitnesses to anything that happened between Frierson and the victim. Thus, their testimony would not have been exculpatory, but merely would have supported inferentially Frierson's defense, in the face of substantial evidence to the contrary.

Accordingly, Frierson has not shown that if his counsel had subpoenaed these two witnesses, he probably would not have been convicted of the offenses of which he was convicted. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### 2. Failure to obtain medical records

▆▆▆▆ Frierson claims that his counsel failed to obtain vital medical records. Frierson's petition does not elaborate on his claim, but the state's answer and Frierson's reply do. Prior to Frierson's trial, the state subpoenaed the medical report of the doctor who examined the victim after the rape. The state tendered the one-page report to defense counsel. However, during trial, it became apparent that the report had two pages, and the second page was missing. Until then, neither the prosecution nor the defense knew about the second page. On the second page, the doctor indicated that he found abrasions on the victim's abdomen and leg.

Frierson argued on appeal that the second page of the report undermined his defense of consent, and therefore that his counsel's failure independently to subpoena the medical report constituted ineffective assistance. (Answer Ex. A at 9; Ex. B at 13, 29, 23–24; Ex. D at 3–4; Ex. E at 15–16.) The court presumes that he argues the same here.

The court does not find defense counsel's conduct so egregious and unreasonable that it amounted to ineffective assistance. The

court notes that the prosecution also believed the report to be one page, and tendered the page to defense counsel. The first page apparently contained nothing that indicated that the victim had suffered any injuries.

When deciding whether a habeas petitioner's counsel should have investigated something, the court determines whether, to a reasonable person, the investigation would have appeared unnecessary from counsel's perspective at the time counsel decided to forego the investigation. *See Williams v. Washington*, 59 F.3d 673, 679–80 (7th Cir. 1995) (citing *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir.1987); *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1014 (7th Cir.1987); *Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986)).

In the present case, as far as defense counsel knew, they had the full medical report of the examining doctor. In hindsight, defense counsel were mistaken. But at the time that they chose not to subpoena the doctor's medical report themselves, they reasonably could have believed that an independent investigation was unnecessary. Thus, the court does not find Frierson's counsel's performance so deficient that they were "not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Moreover, the court is hard-pressed to see how Frierson was actually prejudiced by his counsel's failure to subpoena the medical report. The evidence in the report was not exculpatory, but rather undermined Frierson's defense. In addition, even though Frierson's counsel were not aware of the second page of the report until the doctor was testifying for the state at trial, they were able to conduct a cross-examination and re-cross-examination of the doctor as to the existence of any injury to the victim. (*See* Answer Ex. N at C69–80.)

Thus, Frierson has not shown that the result of the trial probably would have been different but for his counsel's failure to subpoena the medical report, and therefore has not shown that his counsel's performance prejudiced his defense. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly,

the court does not find that Frierson's counsel were unconstitutionally defective for failing to subpoena the medical report.

### 3. Failure to tell Frierson he could testify at his trial

Frierson contends that he was unaware at the time of his trial that he was allowed to testify on his own behalf, and in fact that his counsel told him that he could not testify.

A criminal defendant's right to testify is protected by the Fifth, Sixth, and Fourteenth amendments. *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir.1991) (citing *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2709–10, 97 L.Ed.2d 37 (1987)). However, the Seventh Circuit has recognized the ease with which a habeas petitioner can claim that his counsel prevented him from testifying at trial. *Underwood*, 939 F.2d at 475. Consequently, a "barebones assertion" by a habeas petitioner that he was deprived of his right to testify because of his defense counsel's conduct "is insufficient to require a hearing or other action on his claim," because such a claim is "too facile a tactic to be allowed to succeed." *Underwood*, 939 F.2d at 476.

Thus, a habeas petitioner "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards)" caused him not to testify at trial. *Id.* "Some greater particularity" and "some substantiation," such as an affidavit from the lawyer who allegedly forbade his client to testify, are necessary "to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." *Id.*

Frierson has presented no evidence that his defense counsel failed to tell him that he could testify at his trial, or affirmatively told him that he could not testify at his trial. He simply alleges that this was the case. Moreover, despite Frierson's arguments to the contrary, the colloquy between the trial judge and defense counsel on the issue of

whether defendant would testify does not support Frierson's claim.

At first, defense counsel told the judge that Frierson would testify at trial. (Supplemental Response at B21.) When the judge later made a ruling adverse to the defense regarding other evidence the defense sought to have admitted, defense counsel told the judge that the judge was forcing defendant to testify to get his defense into evidence. (*Id.* at B30.) When the judge implied that defense counsel had to decide before they gave their opening statements whether Frierson would testify, defense counsel protested that Frierson had a right to wait until the state rested before he had to decide if he wanted to testify. (*Id.* at B38.) When the judge later reiterated his adverse evidentiary ruling, defense counsel told the judge that by his ruling, he had forced Frierson to choose between his constitutional right to remain silent and his right to present a defense. (*Id.* at C90.)

The trial judge and defense counsel discussed the admissibility of other evidence that would support Frierson's defense theory, and then the judge asked defense counsel whether they wanted to put Frierson on the record as to whether or not he was going to testify. (*Id.* at C110–11.) Defense counsel responded that they did not think it was necessary because they and Frierson had a pretty decent relationship. (*Id.* at C111.) The judge warned defense counsel that they had to put on the record that they talked to Frierson about his testifying, because if he were convicted, he would claim that they did not tell him that he had a right to testify. (*Id.* at C111.) Regardless of the trial judge's warning, defense counsel never made a record that they told Frierson about his right to testify.

The foregoing colloquy indicates that defense counsel were quite conscious of Frierson's right, and possible need, to testify, and that they were wrestling with the difficult decision of whether to put Frierson on the witness stand. In the complete absence of any evidence to the contrary, the court presumes that defense counsel acted professionally and competently, discussed important decisions with Frierson, and informed Frierson of his right to testify.

Because Frierson has made nothing more than a "barebones assertion" that his counsel failed to tell him of his right to testify and instead told him that he could not testify, the court will not grant an evidentiary hearing or other action on Frierson's claim.

## F. *Rights to confront accuser and present defense*

In his reply to the state's answer to his habeas corpus petition, Frierson raises a new claim not included in his petition. Frierson contends that the trial court's refusal to permit him to impeach the victim concerning her prostitution activities deprived Frierson of his constitutional rights under the Sixth and Fourteenth Amendments to present his case and confront his accuser.

This claim was not included in Frierson's petition for a writ of habeas corpus. Therefore, the state was not given an opportunity to respond to it. Nonetheless, the court is able to decide the claim without the state's input.

Frierson presented this same argument to the Illinois Appellate Court on direct appeal from his conviction. (*See* Answer Ex. A and B.) In affirming Frierson's conviction, the appellate court rejected the merits of the argument. In his petition for leave to appeal to the Illinois Supreme Court, Frierson did not raise the issue of whether he should have been permitted to impeach the victim by evidence of her prostitution activities, and instead based his petition on various other claims of error. (*See id.* Ex. E.) Similarly, Frierson did not raise the impeachment argument in post-conviction proceedings. (*See id.* Ex. G, H, and I.)

Federal courts will not consider a claim raised in a habeas corpus petition that has been procedurally defaulted in state court. *See Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Until recently, the Seventh Circuit had long held that any claim that the habeas petitioner failed to present to the state's highest court would be considered procedurally defaulted. *See, e.g., Nutall v.*

*Greer,* 764 F.2d 462, 463 (7th. Cir.1985). However, in *Hogan v. McBride,* 74 F.3d 144 (7th Cir.1996), the court cast doubt on the unequivocal rule that failure to appeal to the state's highest court automatically results in procedural default. The court stated that forfeiture under 28 U.S.C. § 2254 is a "question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan,* 74 F.3d at 146 (citing *Coleman,* 501 U.S. at 729–44, 111 S.Ct. at 2553–62; *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989)). The court warned that "[f]uture litigants cannot read *Nutall* and its successors as absolute bars even in Illinois. In every case, the initial question is whether the state demands that the particular kind of issue be presented in a petition for discretionary review, on pain of forfeiture." *Hogan,* 74 F.3d at 147.

■ In short, *Hogan* dictates that forfeiture is limited to the issues that the state court insists be raised in its supreme court. *Id.* at 146 (citing *Jenkins v. Gramley,* 8 F.3d 505, 507–08 (7th Cir.1993)). Consequently, in determining whether a habeas petitioner has forfeited his claims, the district court must determine "whether the state courts either have held that a procedural misstep is a forfeiture, or would hold so if a collateral attack were filed in state court." *Hogan,* 74 F.3d at 147.

■ A defendant's failure to seek relief on claims that he could have presented to the Illinois Supreme Court on direct review is grounds for waiver under Illinois law. *United States ex rel. Bailey v. Page,* No. 95 C 7025, 1996 WL 452272, *3 (N.D.Ill. Aug.8, 1996) (citing *People v. Titone,* 151 Ill.2d 19, 25 n. 2, 175 Ill.Dec. 702, 705 n. 2, 600 N.E.2d 1160, 1163 n. 2 (1992); *Cawley v. DeTella,* 71 F.3d 691, 695 (7th Cir.1995)). Accordingly, once Frierson failed to present his claim to the Illinois Supreme Court on direct appeal, under Illinois law, he forfeited the claim.

■ Illinois courts recognize an exception to the strict doctrine of waiver on the ground of "fundamental fairness." *Cawley,* 71 F.3d at 694 (citing *People v. Hamby,* 32 Ill.2d 291, 294, 205 N.E.2d 456, 458 (1965)). However, the exception is quite narrow: a defendant's failure to appeal does not result in forfeiture of the claims only where the failure to appeal results from clearly inadequate representation or the absence of representation by counsel. *See People v. Core,* 48 Ill.2d 544, 546–47, 272 N.E.2d 12, 14 (1971) (applying the exception in the context of a failure to appeal from dismissal of a post-conviction proceeding).

In the present case, Frierson was represented by counsel from the public defender's office on his petition for leave to appeal to the supreme court. Frierson has made no allegations that his counsel who prepared the petition for leave to appeal was clearly inadequate, and the court has found no other indication that counsel was clearly inadequate. Thus, the "fundamental fairness" exception does not apply to Frierson's case.

■ Two other exceptions to the procedural default rule exist, but neither applies to Frierson's case. First, a petitioner can overcome the effects of procedural default by showing cause for the default, as well as actual prejudice from the alleged constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 84, 87, 97 S.Ct. 2497, 2504, 2506, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). Second, even if a petitioner cannot show cause for his procedural default, a federal court may grant a writ of habeas corpus in the "extraordinary case" where a fundamental "miscarriage of justice" has resulted in an unjust incarceration. *Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649. In such a case, the petitioner must show that a constitutional violation probably has resulted in the conviction of an innocent person. *Id.*

■ Frierson has not shown cause for his procedural default. As the court noted above, Frierson was represented by counsel throughout his direct appeal process, and the court has seen nothing that indicates that his counsel was ineffective or that Frierson was somehow prevented from presenting to the Illinois Supreme Court his argument regard-

ing his rights to confront his accuser and present a defense.

Moreover, Frierson has not shown that a fundamental miscarriage of justice has resulted in his being unjustly incarcerated. That is, he has not shown that the trial court's refusal to allow him to impeach the victim with evidence of her prostitution activities probably resulted in the conviction of an innocent person. Frierson has not attempted to argue that he was actually innocent and unjustly incarcerated. More important, the court notes that the evidence against Frierson at trial was substantial. Frierson's is not the "extraordinary case" that warrants an exception to the general rules of procedural default.

Accordingly, Frierson has forfeited his claim that the trial court deprived him of his Sixth and Fourteenth Amendment rights to present a defense and confront his accuser, and the court will not address the argument on its merits.

### III.  CONCLUSION

For the reasons set forth above, the court denies Frierson's petition for a writ of habeas corpus and motion for appointment of counsel.